UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.    16 CR 438-1 |
| | ) | |
| ARTEM VAULIN | ) | Honorable John Z. Lee |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ARTEM VAULIN'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT**

Respectfully submitted,

Ira P. Rothken
THE ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net
*Counsel for Artem Vaulin, Pro Hac Vice pending*

Theodore T. Poulos
Marty Basu
Cotsirilos, Tighe, Streicker, Poulos & Campbell
33 North Dearborn Street
Suite 600
Chicago, Illinois 60602
(312) 263-0345
*Local Counsel for Artem Vaulin*

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  SUMMARY OF THE INDICTMENT AND THE OPERATION OF KAT ................. 2

    A.   The Nature of the Charges ................................................................ 2

    B.   The Indictment Conflates Allegations of Non-Criminal Operations of Torrent
     Sites With Vague Allegations of "Direct Downloads" That Fail To Specify
     Criminal Conduct. .......................................................................... 4

III. THE INDICTMENT FAILS TO ALLEGE A COGNIZABLE OFFENSE AGAINST
     THE UNITED STATES ................................................................................ 6

    A.   Legal Standards ............................................................................. 6

    B.   Counts One Through Thirteen of the Indictment for Criminal Copyright
     Infringement and for Conspiracy to Commit Criminal Copyright Infringement
     Fail To State An Offense. ................................................................. 7

    C.   The Allegations Of "Direct Download Websites" Are Not Sufficient To Save
     The Indictmenet. .......................................................................... 13

    D.   Count One Through Thirteen Are Also Defective Because They Fail To Allege
     Actual Infringements In The Territory Of the United States........................... 15

    E.   The Money Laundering Charges in Counts Fourteen through Sixteen Must Be
     Dismissed Because The Indictment Fails To Properly Allege The Requisite
     Underlying Activity......................................................................... 16

IV.  CONCLUSION ......................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Arista Records, Inc. v. MP3Board, Inc.*, No. 00 CIV. 4660(SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ................................................................................................................ 8

*Armstrong v. Virgin Records*, 91 F.Supp.2d 628 (S.D.N.Y. 2000) ................................................. 17

*Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976 (D. Ariz. 2008) .................................... 16, 18

*Capitol Records Inc. v. Thomas*, 579 F. Supp. 2d 1210 (D. Minn. 2008) ............................... 16, 18

*Cheek v. United States*, 498 U.S. 192 (1991) ................................................................................ 12

*Columbia Pictures Industries Inc. et al v. Gary Fung; Isohunt Web Technologies, Inc.*, 710 F.3d 1020 (9th Cir. 2013) ..................................................................................................... 9

*Connally v. General Construction Co.*, 269 U.S. 385 (1926) ......................................................... 13

*Costello v. United States*, 350 U.S. 359 (1956) .............................................................................. 7

*Diversey v. Schmidly*, 738 F.3d 1196 (10th Cir. 2013) ................................................................. 16

*Dowling v. United States*, 493 U.S. 207, 228 (1985) ............................................................. 11, 13

*Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234 (S.D.N.Y. 2008) ............................. 16

*Energy Intelligence Group, Inc. v. Jefferies, LLC*, 2015 U.S. Dist. LEXIS 43230 (S.D.N.Y. 2015) ................................................................................................................................... 15

*Hamling v. United States*, 418 U.S. 87 (1974) ................................................................................ 7

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y.1992), aff'd 23 F.3d 398 (2d Cir. 1994), cert. den., 513 U.S. 950 (1994) ................................................................................................ 8, 15

*Liparota v. United States*, 471 U.S. 419 (1985) ........................................................................... 11

*London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153 ...................................................... 17, 18

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913 (2005) .................................... 2, 10

*Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) .............................. 8

*Palmer v. Braun*, 376 F.3d 1254 (11th Cir. 2004) .................................................................. 17

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007) ................................... 8

*Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102 (D.D.C. 2011) ....................................... 17

*Russell v. United States*, 369 U.S. 749 (1962.) ........................................................... 14, 15

*Skilling v. United States*, 561 U.S. 358 (2010) .............................................................. 12

*Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)................................... 10

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994) (en banc), *cert.*

  *denied*, 513 U.S. 1001 (1994) .................................................................................... 17

*United States v. Agostino,* 132 F.3d 1183 (7th Cir. 1997) ................................................ 7

*United States v. Awan*, 459 F.Supp.2d 167 (E.D.N.Y. 2006) ....................................... 14

*United States v. Boender*, 691 F. Supp. 2d 833 (N.D. Ill. 2010) ..................................... 7

*United States v. Colon*, 549 F.3d 565 (7th Cir. 2008) .................................................... 13

*United States v. Covington*, 395 U.S. 57 (1969) .............................................................. 7

*United States v. Cross*, 816 F.2d 297 (7th Cir. 1987)...................................................... 8

*United States v. Hollnagel*, No. 10 CR 195, 2011 WL 3664885 (N.D. Ill. Aug., 9 2011) ............... 7

*United States v. Josten*, 704 F.Supp. 841 (N.D.Ill.1989)............................................... 14

*United States v. Labs of Virginia, Inc.*, 272 F. Supp. 2d 764 (N.D. Ill. 2003).................. 7

*United States v. Lanier*, 520 U.S. 259 (1997) ................................................................ 11

*United States v. Ropp*, 347 F. Supp. 2d 831 (C.D. Cal. 2004)...................................... 12

*United States v. Rothberg*, 222 F.Supp. 1009 (N.D. Ill. 2002) ....................................... 12

*United States v. Sampson*, 371 U.S. 75 (1962) ................................................................ 7

*United States v. Smith*, 230 F.3d 300 (7th Cir., 2000) ................................................... 14

*United States v. White*, 610 F.3d 956 (7th Cir. 2010).................................................... 6

*United States v. Wise*, 550 F.2d 1180 (9th Cir. 1977) ..................................................... 8

*United States. v. LaMacchia*, 871 F.Supp. 535 (D.C. Mass., 1994) ................................ 12

**STATUTES**

17 U.S.C. § 506 ............................................................................................. 2, 3, 4, 9

18 U.S.C. § 2339A ..................................................................................................... 14

**OTHER AUTHORITIES**

*Nimmer on Copyright* .................................................................................... 8, 12, 18

S. 3804 - 111th Congress: Combating Online Infringement and Counterfeits Act (2010) ............ 11

S. 968 - 112th Congress: Protecting Real Online Threats to Economic Creativity and Theft of

    Intellectual Property Act (2011) ............................................... 10

## I.    INTRODUCTION

This case arises out of an erroneous theory of criminal copyright law that attempts to hold defendant Artem Vaulin criminally liable for the alleged infringing acts of the users of KickAss Torrents and the other torrent websites alleged in the indictment to be under Vaulin's control (collectively referred to as "KAT").[1] Indeed, this case involves an untested theory of first impression for purported criminal copyright liability.

Websites like KAT are devoid of content files.  Instead, KAT is nothing more than a search engine, no different in any material way from Google and other popular website search engines, except that KAT indexes BitTorrent files. Computerized operations at torrent sites acquire, store and distribute uncopyrighted "torrent files" or "torrents."  A torrent file "contain[s] instructions for identifying the Internet addresses of other BitTorrent users."  (Indictment at ¶ 1(a)).

Thus, at its core, the indictment merely alleges that visitors to KAT may take advantage of KAT's automated search processes to search for and locate "dot torrent" files. Such files contain textual information assembled by automated processes and *do not* contain copyrighted content. After the visitor leaves the KAT website the visitor may stop and do nothing.  Or, after leaving the KAT site, the visitor may choose to use the data in the torrent files identified in a search.  However, such use depends on the visitor acquiring and using "thin client" BitTorrent software that users independently download and install on their own computers.  Using such third-party software, the visitor may use BitTorrent files that work like links to download materials such as content files, but only if such materials are at that very moment actively being hosted and constructed by other BitTorrent users located elsewhere on the Internet.  The fundamental flaw in the government's

---

[1] For the purposes of the instant motion to dismiss, we assume the government's allegations regarding Defendant Vaulin's control over websites as manifested in the indictment to be true but reserve the right to argue the allegations.

untenable theory of prosecution is that there is no copyright protection for such torrent file instructions and addresses. Therefore, given the lack of direct willful copyright infringement, torrent sites do not violate criminal copyright laws.

The indictment attempts hold the purported operator of a torrent search site that is devoid of content files, criminally responsible for the acts of users who go elsewhere to allegedly infringe on copyrighted materials. Under civil copyright law, a person who does not directly use or distribute copyrighted materials, but aids other's in doing so, may be held contributorily liable for infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913, 930 (2005). This is known as "secondary" infringement. However, "secondary copyright liability" of persons who encourage or induce infringing activities of third parties (Indictment at ¶ 3) is only a common-law ***civil*** theory of liability that cannot be ***criminally*** prosecuted absent an express act of Congress. Congress, however, has declined to enact such legislation. Therefore, one cannot criminally conspire to violate a civil common-law copyright prohibition under *Grokster* and its progeny as it is not an offense against the United States.

Moreover, the indictment also fails to specifically allege that any copyrighted media was downloaded or otherwise infringed within the territory of the United States. This too is critical because the U.S. copyright laws do not protect against extra-territorial infringement. Nonetheless, the indictment merely – and insufficiently – alleges that conduct at issue made copyrighted content "available" to "millions of individuals in the United States." (*Id*. at ¶4). Merely "making" copyrighted materials "available" in the United States does not establish actual necessary infringements in the United States.

## II.  SUMMARY OF THE INDICTMENT AND THE OPERATION OF KAT

### A.  The Nature of the Charges

Count One of the indictment charges Mr. Vaulin and others with a conspiracy to commit

criminal copyright infringement in violation of 17 U.S.C. §§ 506(a)(1)(A) and 506(a)(1)(C). Counts Two through Twelve charge Mr. Vaulin with substantive violations of 17 U.S.C. § 506(a)(1)(C), which prohibits any infringement "committed by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution." Count Thirteen charges a substantive violation of 17 U.S.C. §§ 506(a)(1)(A), which prohibits any infringement "committed for purposes of commercial advantage or private financial gain."

Count Fourteen charges a conspiracy to commit money laundering in violation of 18 U.S.C. 1956(h). Count Fifteen charges a substantive count of money laundering in violation of 1956(a)(2)(B)(i). Count Sixteen charges a substantive count of money laundering in violation of 1956(a)(2)(A). For each of these counts, the specified unlawful activity is the alleged criminal copyright infringement charged in Counts One through Thirteen.

The government alleges a conspiracy between Vaulin, his co-defendants, and "others unknown." While the indictment does not specify those others, it appears government may be alleging that the KAT operators and the KAT users, i.e. visitors to the KAT website, entered into a conspiracy to commit copyright violations. That is, the government alleges that Vaulin and his co-defendants "encourage[d], induce[d], facilitate[d]" visitors to the website to, by the visitors' own actions, download copyright-protected media. (Indictment ¶3). KAT purportedly did so by indexing torrent files, sorting them into genres and providing a search engine to locate and identify torrent files. (*Id*., ¶¶9-10.)

The alleged conduct focuses on the downloading of copyright protected movies. Significantly, the indictment does not allege that anything on the KAT search engine or in the genres

constituted copyrighted materials. Indeed, the KAT website did not store, host or otherwise contain any movies at all. Instead, the indictment asserts that the torrent files identified by the KAT search engine "contained instructions for identifying the Internet addresses of other BitTorrent users who had the movie, and for downloading the movie from other users." (*Id*. at ¶1). The indictment also alleges, quite ambiguously, that KAT "offered users a direct download feature that enabled users to download copyrighted material directly from computer servers *associated with* KAT, rather than from other KAT users." *Id*. at ¶¶1(b); *see also* ¶¶15.

Counts Two through Twelve allege that Vaulin directly violated 17 U.S.C. §§ 506(a)(1)(A) by allegedly distributing copyrighted movies "by making [them] available on a computer network accessible to members of the public." Similarly, Count Thirteen alleges that Vaulin directly violated 17 U.S.C. § 506(a)(1)(C) by "reproducing and distributing over the Internet" various copyrighted works.

However, it is entirely unclear from the indictment whether Vaulin is claimed to have violated the copyright laws through KAT's search engine torrent file framework or through the direct downloading of movies and other materials at websites he allegedly operated. This distinction is of critical importance because, as explained below, the Vaulin's alleged conduct in the operation of KAT's search engine torrent file framework cannot as matter of law constitute an offense against the United States. Because Counts One through Thirteen all incorporate Paragraph 1 of the indictment, which describes the torrent framework that allows website visitors to download copyrighted materials from *other* websites through torrent file type links, the government seems to base its theory of copyright infringement on the actions of the website users, not Vaulin.

B.     **The Indictment Conflates Allegations of Non-Criminal Operations of Torrent Sites With Vague Allegations of "Direct Downloads" That Fail To Specify Criminal Conduct.**

"The Operation of KAT" (Indictment, ¶¶ 4-20) involves "torrent files" or "torrents." There

is no allegation that a torrent file contains copyrighted material. Other than global, indirect references and attempts at guilt by association, there is no allegation of storage or downloading of copyrighted materials on or from KAT. See, e.g., ¶ 1(b) (emphases added): "KAT also offered users a direct download feature that **enabled** users to download copyrighted material directly from computer servers **associated** with KAT rather than from other KAT users."

The indictment also alleges that defendants "provided KAT users information about the identity, source and quality of the content associated with torrent files on KAT." (Indictment, ¶ 8; see also ¶ 11.) It is not alleged that any such "information" was copyrighted. Defendants allegedly indexed torrents on the site, provided a search engine for visitors and sorted torrents into genres. (*Id.*, 9-10.) It is not alleged that anything on the search engine or in the genres was copyrighted.

As noted above, the indictment alleges operations of BitTorrent and of torrent sites like KAT and torcache.net. (Indictment, ¶¶ 1(a), (b) and (c); ¶ 12.) BitTorrent is "a system for quickly distributing large files over the Internet." (*Id.*, ¶ 1(a)). A BitTorrent user desiring to obtain a specific file first locates a torrent file at a torrent site. (*Id.*, ¶ 1(a).) Torrent sites "store[] and host[] torrent files" and "collect[] and upload[] torrent files." (*Id.*, ¶¶ 1(c), 4, 5.) A torrent file "contain[s] instructions for identifying the Internet addresses of other BitTorrent users." (*Id.*, ¶ 1(a).) Thus, having obtained the torrent, users are instructed to go to places "offsite" from the torrent site.

Locating and downloading the torrent are performed by means of a "client" program running on the individual user's computer. (*Id.*, ¶¶ 19, 26(a).) The client also finds an offsite group of participants in the BitTorrent network, called a "swarm," who are exchanging pieces of the desired file.[2] The user's client automatically interacts with others in the swarm and collects and assembles

---

[2] "BitTorrent enabled a user to connect to the computers of other users in order to download and upload pieces of the file from and to other users. … Once a user downloaded all of the pieces… [the file] was automatically reassembled into its original form…" (Indictment, ¶ 1(a).)

the pieces into a complete file. (*Id.*, ¶ 1(a).) In BitTorrent, users "swap" pieces; the process is more efficient "Instead of downloading a file … from a single source." (*Ibid.*) Once a dot torrent file is downloaded the KAT "user" leaves the torrent site behind. The term "users" in the indictment is being used to obfuscate that a KAT "user" ceases being a KAT "user" once the dot torrent file is downloaded. Any infringement that could occur happens after the torrent site is left behind.

Apparently referring to downloading files from a single source, the indictment at ¶1(d) alleges that defendants also ran "direct download websites" that allegedly "enabled registered users to download or stream copyrighted movies and other media directly from the website." Vague allegations of "enabling" by means of direct download websites in ¶ 1(d) echo equally vague allegations in ¶ 1(b) that Kat's operations as a torrent site "enabl[ed] users to copy and obtain copyrighted material directly from other KAT users for free." These conflated operations in ¶ 1 of Count One are alleged together as the first paragraph of all subsequent Counts.

## III.    THE INDICTMENT FAILS TO ALLEGE A COGNIZABLE OFFENSE AGAINST THE UNITED STATES

### A.    Legal Standards

Generally, an indictment is "legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam) The court accepts as true the facts alleged in the indictment and determines only whether the indictment is "valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956). *See also Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Agostino,* 132 F.3d 1183,1189 (7th Cir. 1997)

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the

general issue." Pursuant to Rule 12(b), "[a]n indictment may be dismissed if subject to a defense that raises a purely legal question." *United States v. Boender*, 691 F. Supp. 2d 833, 837 (N.D. Ill. 2010) (internal citations omitted); *see also United States v. Labs of Virginia, Inc.*, 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003) ("An indictment, or a portion thereof, may be dismissed if it is otherwise defective or subject to a defense that may be decided solely on issues of law.") As the Supreme Court explained in *United States v. Covington*, a defense is capable of determination without a trial of the general issue "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." 395 U.S. 57, 60 (1969). On a motion to dismiss the indictment, the court questions whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. *United States v. Sampson*, 371 U.S. 75, 78–79 (1962). "An indictment, or portion thereof, may be dismissed if the allegations are insufficient to state a violation of a governing statute." *United States v. Hollnagel*, No. 10 CR 195, 2011 WL 3664885, *8 (N.D. Ill. Aug., 9 2011) (citing United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988)).

**B.**     **Counts One Through Thirteen of the Indictment for Criminal Copyright Infringement and for Conspiracy to Commit Criminal Copyright Infringement Fail To State An Offense.**

The reproduction and distribution of mere torrent files does not violate the criminal copyright statutes. Courts presiding over cases of criminal copyright infringement look to principles of civil law for guidance. See *United States v. Cross*, 816 F.2d 297, 303 (7th Cir. 1987); *Kelly v. L.L. Cool J.*, 145 F.R.D.32, 39 (S.D.N.Y. 1992) (citing *Nimmer on Copyright* § 15.01 for the proposition that "conduct that does not support a civil action for infringement cannot constitute criminal conduct under 17 U.S.C. § 506(a)."); *United States v. Wise*, 550 F.2d 1180, 1188 n.14 (9th Cir. 1977) (noting the "general principle in copyright law of looking to civil authority for guidance in criminal cases").

Civil law clearly teaches that search engines and providers of hyperlinks and torrent files are

not a form of "direct" copyright infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 717 (9th Cir. 2007); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 n.12 (N.D. Cal. 2004) ("hyperlinking per se does not constitute direct copyright infringement because there is no copying."); *Arista Records, Inc. v. MP3Board, Inc.*, No. 00 CIV. 4660(SHS), 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002); *See e.g. Columbia Pictures Industries Inc. et al v. Gary Fung; Isohunt Web Technologies, Inc.*, 710 F.3d 1020, 1027-1028, 1031 (9th Cir. 2013) ("BitTorrent users thus rely on torrent sites to find and share torrent files… Because the torrent sites typically contain only torrent files, no copyrighted material resides on these sites…*Grokster* III addressed the circumstances in which individuals and companies are secondarily liable for the copyright infringement of others using the Internet to download protected material.")

A hyperlink is the most direct of the indirect ways to obtain materials online. The universal mouse click accomplishes the task almost instantly. In contrast, in BitTorrent, the user activates a client, which downloads a torrent file. "Internet addresses of other BitTorrent users" (Indictment, ¶ 1(a)) cannot be distinguished in a reasonable way from addresses in hyperlinks or other information location tools. It is not possible to reconcile the lack of direct civil infringement liability for providing potential infringers with hyperlinks with a criminal charge of direct infringement for providing potential infringers with torrent files.

The indictment refers to "computer servers around the world" (e.g., ¶ 18) and apparently attempts to implicate the entire Internet as the "computer network accessible to members of the public" that is a predicate of Section 506(a)(1)(C). The indictment would make defendant responsible for infringements committed by former visitors to KAT who are acting in an entirely different online context. In the global connected culture, such elastic expansions of criminal exposure cannot be permitted to stand absent overt action by Congress updating the Copyright Act.

Allegations of infringements by third-party users do not suffice to allege willful infringements by defendant. The indictment conflates defendants' alleged "commercial advantage or financial gain" in hosting torrent files (17 U.S.C. § 506(a)(1)(A)) with offsite infringements by third party users. In BitTorrent, many steps intervene between a torrent site that makes a torrent available and copyright infringement committed by an individual who previously visited the torrent site. Thus, "making available" a dot torrent file is distinctly different from "making available" potentially infringing content.

The indictment therefore appears to improperly incorporate principles of civil secondary copyright infringement into the criminal law. A person who copies or distributes infringing materials violates express statutes and is a "direct infringer." In contrast, a "secondary infringer" could be held *civilly* liable for "encourag[ing], induc[ing] and facilitat[ing]" (*Id.*) under principles of contributory, vicarious or inducement liability. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913, 930 (2005). Secondary liability in civil copyright law is a common-law creation of judges, but it is not a federal crime enacted by Congress. *Sony Corp. v. Universal City Studios, Inc*., 464 U.S. 417, 434 (1984). Indeed, Congress specifically declined to enact statutes that would have authorized prosecution of Internet providers who link to infringing materials – the exact conduct the government seeks to prosecute here. *See* S. 968 - 112th Congress: Protecting Real Online Threats to Economic Creativity and Theft of Intellectual Property Act (2011); *see also* S. 3804 - 111th Congress: Combating Online Infringement and Counterfeits Act (2010).

Thus, elastic expansion of criminal liability based on civil common-law principles like secondary copyright liability cannot establish federal crimes, which are "solely creatures of statute." *Liparota v. United States,* 471 U.S. 419, 424 (1985). In copyright law in particular "the deliberation with which Congress . . . has addressed the problem of copyright infringement for profit, as well as

the precision with which it has chosen to apply criminal penalties in this area, demonstrates anew the wisdom of leaving it to the legislature to define crime and prescribe penalties." *Dowling v. United States*, 493 U.S. 207, 228 (1985). As Justice Blackmun observed in *Dowling*, copyright is an area in which Congress has chosen to tread cautiously, relying "chiefly . . . on an array of civil remedies to provide copyright holders protection against infringement," while mandating "studiously graded penalties" in those instances where Congress has concluded that the deterrent effect of criminal sanctions is required. *Id.* at 221, 225. "This step-by-step, carefully considered approach is consistent with Congress' traditional sensitivity to the special concerns implicated by the copyright laws." *Id.* at 225.

The *Dowling* Court also stated: "It is the legislature, not the Court, which is to define a crime") (quoting *United States v. Wilberger*, 5 Wheat. 76 (1820)). "Accordingly, when assessing the reach of a federal criminal statute, [courts] must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids." *Dowling*, 473 U.S. at 213, 228-29 (1985). In determining whether Congress intended to criminally proscribe a particular act, a "narrow interpretation" is appropriate. *Id.* As stated in *United States v. Lanier*, 520 U.S. 259, 266 (1997), "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."

In *United States v. LaMacchia*, 871 F.Supp. 535 (D.C. Mass., 1994), the court applied the rule in *Dowling*, supra, and held that alleged criminal copyright infringement could not be prosecuted under wire fraud statutes "as an end run" around the Copyright Act to charge an MIT student who ran an online bulletin board. Congress responded by enacting the No Electronic Theft (NET") Act in 1997. *United States v. Rothberg*, 222 F.Supp. 1009, 1018 (N.D. Ill. 2002). See also *United States*

*v. Ropp*, 347 F. Supp. 2d 831 (C.D. Cal. 2004) (novel "keylogging device" did not fit elements of the Wiretap Act). Congress has not chosen to criminalize secondary copyright infringement.

Absent an Act of Congress or an authoritative judicial ruling, online participants are entitled to assume that "conduct that does not comprise civil infringement cannot constitute criminal infringement." Nimmer, supra. at § 15.01[A][2]. Indeed, the "rule of lenity" requires that, in light of the startling, novel and expansive reach of this prosecution, any ambiguity is resolved in favor of defendants. *Skilling v. United States*, 561 U.S. 358, 410 (2010). Similarly, in *Cheek v. United States*, 498 U.S. 192, 199 (1991), the Court held that good-faith misunderstanding of the legal duties imposed on defendant by complex tax laws would negate a finding of willfulness. Mr. Vaulin could not have anticipated that, under the laws of the United States, they would be criminally indicted for allegedly operating a torrent site.

The indictment also utterly fails to properly allege other required elements of a criminal conspiracy. For example, the required agreement between alleged conspirators need not take a particular form. However, there must be some genuine meeting of the minds as to commission of a crime namely direct willful copyright infringement: merely engaging in running a BitTorrent search engine is not sufficient to charge the crime of conspiracy. As one court explained, even retail businesses that deal in goods are not engaged in a conspiracy with their customers merely because they engage in repeat or standardized transactions. *See United States v. Colon*, 549 F.3d 565, 567-68 (7th Cir. 2008).

Finally, the government's theory of a criminal version of secondary copyright infringement by a BitTorrent search engine, whether by calling it a conspiracy or otherwise, would be unconstitutional under the void-for-vagueness doctrine. "A penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory enforcement." *Connally v. General Construction Co*., 269 U.S. 385, 391 (1926). If the Government's theory takes hold, then ordinary people and legal scholars alike will be left guessing where civil secondary copyright infringement turns into criminality. Indeed, as an example of such vagueness, the DMCA, such as sections 512 (c) and 512 (d) is only a defense in the civil "secondary copyright infringement" context because civil indirect or secondary liability is possible only under the common law. Common law liability principles cannot be extended to criminal liability, which must be specifically proscribed by statute. *See Dowling*, 473 U.S. at 213-214. Because there cannot be common law crimes under United States law, the DMCA further emphasizes that criminal indirect liability for copyright infringement does not exist by statute. Under the Government's theory the DMCA is nullified and ISPs (or OSPs as articulated in the DMCA statute) are still vulnerable to the broad "over discretion" of a criminal prosecutor who can pick and choose which internet search engines or BitTorrent technologies he or she doesn't like and criminally prosecute them with vague criminal theories.

Here, automated operations that copy, store and distribute torrents simply cannot and do not violate any criminal prohibition. Defendant Vaulin should not be subject to such an experimental and novel criminal prosecution and related *in terrorem* threats absent changes to the Copyright Act. As such, Count One of the indictment, which alleges a conspiracy to violate the copyright laws of the United States, and Counts Two through Thirteen, which allege substantive violations of said laws, fail to allege cognizable offenses and should be dismissed as a matter of law.

### C.    The Allegations Of "Direct Download Websites" Are Not Sufficient To Save The Indictment.

It is generally acceptable for an indictment to "track" the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.  *United States v. Smith*, 230 F.3d 300, 305 (7th Cir., 2000).  As the Seventh Circuit has explained:

> However, an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749 (1962.). In order for an indictment to satisfy this second hurdle, we require, at a minimum, that it provide some means of ***pinning down the specific conduct at issue***. *United States v. Josten*, 704 F.Supp. 841, 844 (N.D.Ill.1989).  Yet in this inquiry, the presence or absence of any particular fact need not be dispositive of the issue.

(*Id.*, emphasis added).  Thus, for example, in *United States v. Awan*, 459 F.Supp.2d 167 (E.D.N.Y. 2006), the court dismissed indictments that alleged defendant provided "material support" to terrorists: "the indictment uses the generic expression "material support," as defined in 18 U.S.C. § 2339A(b), without specifying which of a variety of activities, any one of which would be criminal, that the defendant must defend against or which the grand jury considered."  *Id*. at 175.  The *Awan* court further stated:

> To comply with the protections of the Fifth and Sixth Amendments, an indictment must contain sufficiently specific facts to provide the defendant "with reasonable certainty, of the nature of the accusation against him" so that he knows "what he must be prepared to meet." *Russell v. U.S.*, 369 U.S. 749, 764-65, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (internal citations and quotations omitted).

(*Id*.)

In civil cases of infringement, principles of specificity are set forth in *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y.1992), *aff'd* 23 F.3d 398 (2d Cir. 1994), *cert. den.*, 513 U.S. 950 (1994); see also *Energy Intelligence Group, Inc. v. Jefferies, LLC*, 2015 U.S. Dist. LEXIS 43230 (S.D.N.Y. 2015). Under *Kelly*, a claim of copyright infringement must allege: "by what acts and

13

during what time the defendant infringed the copyright." Under 17 U.S.C. § 501(a), an infringer is a person who violates exclusive rights of copyright chiefly defined by 17 U.S.C. §§ 106, which involve copies of the copyrighted work. Here, allegations of acts of infringement are conglomerated and vague. There is no "means of pinning down the specific conduct at issue." (*Smith* and *Jostens*, supra.) Paraphrasing *Awan*, supra, the indictment fails to specify which of a variety of activities that the defendant must defend against or which the grand jury considered.

The indictment chiefly alleges non-criminal conduct involving torrent sites. Allegations that defendants stored or distributed infringing materials are scattered, skimpy and vaguely general. Defendants are unable to prepare a defense against improper, vague and general charges. Here, distinctly different classes of alleged offenses are conglomerated. Hosting and distributing infringing copies of "The Butler" might be considered a direct infringement. Hosting and distributing a torrent file that visitors use offsite to obtain the "The Butler" by means of the BitTorrent network is not criminal. Providing a hyperlink to an infringing copy of "The Butler" is not criminal.

In both the conspiracy and substantive counts, the indictment alleges the defendants "made available" infringing materials but does not say how such materials were "made available." While the civil cases such as *Amazon*, *MP3Board*, and *Isohunt* and their progeny provide a clear consensus that "content free" sites like search engines that provide hyperlinks or dot torrent files are not considered direct or "primary" copyright infringers, there is a lack of consensus on what "making available" actually means for those that host the actual infringing content files. One court has noted the "dissensus" of lower court decisions on what "making available" means in civil cases, (*Diversey v. Schmidly*, 738 F.3d 1196, 1202 n.7 (10th Cir. 2013)). *See also Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234, 240-43 (S.D.N.Y. 2008) (collecting many cases). Numerous courts

have held that merely "making available" copyrighted works on servers, without more, does not constitute civil copy right infringement. *See, e.g.*, *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008) ("*Howell*") (actual dissemination required for copyright infringement); *Capitol Records Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1218–19 (D. Minn. 2008) , vacated on other grounds, 692 F.3d 899 (8th Cir. 2012) ("*Thomas*") (same); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 168-69 (D. Mass. 2008) ("*Doe 1*") (same).

Defendant Vaulin is charged with non-criminal conduct that is woven into vague allegations that cover both non-criminal and possibly criminal conduct. The conglomerations are duplicitous. The indictment is attempting to convict for non-criminal conduct and further attempting to cause jury confusion and erroneous evidentiary rulings. Therefore, Counts One through Thirteen of the indictment should be dismissed.

**D.  Count One Through Thirteen Are Also Defective Because They Fail To Allege Actual Infringements In The Territory Of the United States.**

"'The undisputed axiom, that United States copyright law has no extraterritorial application' " was reiterated in *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1001 (1994) and elaborated in *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 123-129 (D.D.C. 2011). *See also, Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) (U.S. law generally "cannot be invoked to secure relief for acts of infringement occurring outside the United States"); *Armstrong v. Virgin Records*, 91 F.Supp.2d 628, 634 (S.D.N.Y. 2000) (necessity of "predicate acts of infringement within the United States.")

The Conspiracy Count alleges that defendants' actions "*made available* and caused others to *make available* without authorization vast amounts of copyrighted material on KAT to millions of individuals in the United States." (Indictment at ¶ 4)(emphasis added).[3]  Similarly, Counts Two

---

[3] It also alleges that defendants "operated KAT and caused others to operate KAT using a network

through Twelve each allege that Mr. Vaulin substantively infringed a copyright "by making available on a computer network accessible to members of the public" certain specified movies.

These allegations plainly do not suffice to state an offense against the United States. There is no specific allegation of actual infringements in the territory of the United States. This defect is fatal because as the above-cited case law makes clear, the U.S. copyright laws have no application to a violating download – or even millions of violating downloads -- occurring elsewhere in the world. That fact that KAT had a server in Chicago does not alter the equation. The decisions in *Howell*, *Thomas,* and *Doe 1*, supra at 14, make clear that "making available" actual copyrighted works on servers in the United States is insufficient to constitute a civil copyright "infringement" unless there is proof of an actual infringing download. *Howell*, 554 F. Supp. 2d at 981 ("The general rule, supported by the great weight of authority, is that 'infringement of [the distribution right] requires an actual dissemination of either copies or phonorecords."); *Thomas*, 579 F. Supp. at 1218– 19 ("[T]he plain meaning of the term 'distribution' does not include making available and, instead, requires actual dissemination."); *Doe 1*, 542 F. Supp. 2d at 168-69 ("Merely because the defendant has 'completed all the steps  necessary for distribution' does not necessarily mean that a distribution has actually occurred."). *See also* 2 Nimmer on Copyright § 8.11[A], at 8-124.1("Infringement of [the right to distribute] requires an actual dissemination of either copies or phonorecords."). Counts One through Thirteen should be dismissed on this basis alone.

**E.    The Money Laundering Charges in Counts Fourteen through Sixteen Must Be Dismissed Because The Indictment Fails To Properly Allege The Requisite Underlying Activity.**

Obviously, the money laundering charges contained in Counts Fourteen through Sixteen depend on underlying predicates of criminal copyright infringement. Because Counts One through

---

of computer servers … in Chicago."  (¶ 18).

Thirteen fails to state an offense, the dependent money laundering counts must also be dismissed.

## IV. CONCLUSION

The Government's erroneous theory of the case that hosting torrent files or running a search engine for torrent files is a willful direct criminal copyright infringement fails as a matter of law. Any theory that a torrent search engine could be held responsible for the offsite infringing acts of its users would be a theory of *civil* secondary copyright infringement. Such a civil theory is not an offense against the United States and fails as a matter of law. Any and all counts that are dependent on criminal copyright infringement, including the conspiracy and money laundering counts, must fail. For all the reasons set forth above, the Court should dismiss the indictment.

Respectfully submitted,

/s/ Ira P. Rothken

ROTHKEN LAW FIRM
3 Hamilton Landing Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905
ira@techfirm.net


*/s/ Theodore T. Poulos*

COTSIRILOS, TIGHE, STREICKER,
  POULOS & CAMPBELL LTD.
33 North Dearborn Street, Suite 600
Chicago, Illinois 60602
(312) 263-0345