UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| vs. | No. 16 CR 438–1 |
| | Judge John Z. Lee |
| ARTEM VAULIN, also known as "tirm" | |

## **RESPONSE TO DEFENDANT ARTEM VAULIN'S MOTION TO DISMISS**

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, submits the following response to defendant's motion to dismiss.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT .................................................................................... 1

 I.  This Court Should Deny Defendant's Motion Without Prejudice,
     Permitting Him to Refile When He Appears Here ............................................ 1

 II. If this Court Decides to Address the Merits Before the Defendant
     Appears, It Should Deny the Motion to Dismiss ................................................. 4

     1.  Defendant May Be Liable for Conspiring to Commit and Aiding
         and Abetting Criminal Copyright Infringement Through the
         Operation of Torrent Websites ........................................................ 4

     2.  The Indictment Validly Charges the Defendant with Conspiring to
         Commit and Aiding and Abetting Copyright Infringement ......................... 9

     3.  The Indictment Properly Charges Infringement in the United States ..... 15

     4.  The Indictment's Allegations Regarding the Direct–Download
         Websites Are Not Vague ............................................................. 16

III. CONCLUSION ................................................................................. 17

**TABLE OF AUTHORITIES**

**CASES**

*Appleyard v. Massachusetts*, 203 U.S. 222 (1906) ........................................................ 2

*Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367
(2004) ..................................................................................................................... 4

*In re Assets of Martin*, 1 F.3d 1351 (3d Cir. 1993) ...................................................... 1

*In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270 (S.D.N.Y. 2001) ........................ 1

*In re Hijazi*, 589 F.3d 401 (7th Cir. 2009).......................................................... 2, 3, 4

*Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353 (Fed. Cir. 2008).................... 15

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987
(9th Cir. 1998) ....................................................................................................... 15

*Maydak v. U.S. Dep't of Education*, 150 F. App'x 136 (3rd Cir. 2005) ........................ 1

*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) ............................................ 7

*Pinkerton v. United States*, 328 U.S. 640 (1946) ........................................................ 5

*Russell v. United States*, 369 U.S. 749 (1962)............................................................ 10

*Sony Corp. v. Universal City Studies, Inc.*, 464 U.S. 417 (1984) ................................. 7

*Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.*, 24 F.3d 1088 (9th Cir. 1994) .......... 15

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292
(4th Cir. 2012) ....................................................................................................... 15

*United States v. Catino*, 735 F.2d 718 (2d Cir. 1984).................................................. 2

*United States v. Cross*, 816 F.2d 297 (7th Cir. 1986) .................................................. 6

*United States v. Debrow*, 346 U.S. 374 (1953) ............................................................ 9

*United States v. Eagleson*, 874 F.Supp. 27 (D. Mass. 1994) ....................................... 2

*United States v. Eng*, 951 F.2d 461 (2d Cir. 1991) ...................................................... 1

*United States v. Fassnacht*, 332 F.3d 440 (7th Cir. 2003)................................... 10, 14

*United States v. Gooch*, 120 F.3d 78 (7th Cir. 1997) ................................................ 13

*United States v. Grajales-Lemos*, No. CR 94-621, 2012 WL 1405712
(S.D. Fla. Mar. 27, 2012) .......................................................................... 2

*United States v. Hach*, 162 F.3d 937 (7th Cir. 1998) .................................... 5

*United States v. Jones*, 678 F.2d 102 (9th Cir. 1982) ................................... 6

*United States v. Marshall*, 856 F.2d 896 (7th Cir. 1988) ............................. 2

*United States v. May*, 625 F.2d 186 (8th Cir. 1980) ..................................... 6

*United States v. McNeese*, 901 F.2d 585 (7th Cir. 1990) ............................ 10

*United States v. Newman*, 755 F.3d 543 (7th Cir. 2014) .............................. 6

*United States v. Oliveri*, 190 F. Supp. 2d 933 (S.D. Tex. 2001) .................. 2

*United States v. Pino-Perez*, 870 F.2d 1230 (7th Cir. 1989) ....................... 5

*United States v. Rebolledo-Delgadillo*, 820 F.3d 870 (7th Cir. 2016) ......... 5

*United States v. Slater*, 348 F.3d 666 (7th Cir. 2003) ................................. 6

*United States v. Smith*, 230 F.3d 300 (7th Cir. 2000) ................................. 10

*United States v. Stanzione*, 391 F. Supp. 1201 (S.D.N.Y. 1975) ................. 2

*United States v. Stevens*, 543 F. Supp. 929 (N.D. Ill. 1982) ....................... 6

*United States v. White*, 610 F.3d 956 (7th Cir. 2010) ...................... 9, 10, 17

*United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999)......................... 10, 13

*United States v. Yeh*, 2013 WL 2146572 (D. Cal. May 15, 2013) ................. 2

*Update Art, Inc. v. Modin Publ'g Ltd.*, 843 F.2d 67 (2d Cir. 1988) ............ 15

**STATUTES**

17 U.S.C. § 506(a) ..................................................................................... 6, 8

17 U.S.C. § 506(a)(1)(A) ........................................................................ 11, 13

17 U.S.C. § 506(a)(1)(C) .................................................................... 11, 12, 13

18 U.S.C. § 2........................................................................................ 5, 6, 8, 14

18 U.S.C. § 371............................................................................... 5, 6, 8, 10, 14

18 U.S.C. § 2319(b)(1) ............................................................................... 11, 13

18 U.S.C. § 2319(d)(2) .......................................................................... 11, 12, 13

18 U.S.C. § 3290 ................................................................................................ 2

## FEDERAL RULES OF CRIMINAL PROCEDURE

Federal Rule of Criminal Procedure 7(c)(1) .......................................... 9, 17

Federal Rule of Criminal Procedure 12(b) .................................................. 1

## OTHER AUTHORITIES

*Copyright Law Revision: Hearings on H.R. 2223 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Comm. on the Judiciary*, 94th Cong., 1st Sess. 157 (May 8, 1975) ...................................... 8

James Lincoln Young, *Criminal Copyright Infringement and a Step Beyond*, 30 Copyright L. Symp. (ASCAP) 157 (1983) ................................................ 8

M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 828 (5th ed. 2007) ........................................................................................ 2

*Nimmer on Copyright* § 15.01[A][2] (2015) ................................................. 8

S. 968, 112th Cong. § 6(a) (2011) ........................................................... 7 n.1

*Statements on Introduced Bills and Joint Resolutions*, 157 Cong. Rec. S. 2932 (May 12, 2011) ........................................................................................ 7

*The Criminalization of Copyright Infringement in the Digital Era*, 112 Harv. L. Rev. 1705 n.39 (1999) ............................................................................. 8

## I.  INTRODUCTION

The defendant seeks to dismiss the indictment in this case pursuant to Federal Rule of Criminal Procedure 12(b), claiming the indictment fails to state a crime. R. 27. Not only is the defendant's motion premature—for he has not yet appeared in this case—it glosses over basic principles of criminal law and criminal procedure, most notably the scope of criminal activity prohibited under conspiracy and aiding and abetting theories, and the centuries-old principle that the proper vehicle for challenging the sufficiency of the government's evidence is a trial, not a motion to dismiss an indictment properly returned by the grand jury.

## II.  ARGUMENT

### I.  **This Court Should Deny Defendant's Motion Without Prejudice, Permitting Him to Refile When He Appears Here**

The Court should exercise its discretion to deny the defendant's motion without prejudice until he appears in this case, pursuant to the fugitive disentitlement doctrine, which "provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285–86 (S.D.N.Y. 2001). This doctrine may be applied to overseas defendants who resist proceedings in the United States. *See, e.g.*, *Maydak v. U.S. Dep't of Education*, 150 F. App'x 136, 137–38 (3rd Cir. 2005) (*per curiam*); *In re Assets of Martin*, 1 F.3d 1351, 1356 (3d Cir. 1993) (concluding, where defense counsel could "present no facts from which [the court] could conclude that he is unable to return [from Russia] to answer the indictment," that the court "can regard him as a fugitive"); *United States v. Eng*, 951 F.2d 461, 462, 464 (2d Cir. 1991); *United States*

*v. Catino*, 735 F.2d 718, 779 (2d Cir. 1984) (holding, where criminal defendant "actively resisted the extradition request throughout the proceedings," that the defendant engaged in "constructive flight from justice").[1]

Applying these principles, courts may defer ruling on pre-arraignment motions filed by defendants who seek something akin to an "advisory opinion" about whether a particular defense has merit. *See, e.g.*, *United States v. Yeh*, 2013 WL 2146572, at *2 (D. Cal. May 15, 2013) ("This order will not reach the merits of defendant's motion at this time, as to do so would essentially be to give defendant an advisory opinion on whether a statute of limitations defense would fly."); *United States v. Grajales-Lemos*, No. CR 94-621, 2012 WL 1405712 (S.D. Fla. Mar. 27, 2012); *United States v. Oliveri*, 190 F. Supp. 2d 933, 936 (S.D. Tex. 2001); *United States v. Eagleson*, 874 F. Supp. 27, 29–31 (D. Mass. 1994); *United States v. Stanzione*, 391 F. Supp. 1201, 1202 (S.D.N.Y. 1975).

This doctrine is discretionary, however, as underscored by *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), which held that the unique circumstances of the case—the

---

[1] This definition of "fugitive" is consistent with other authorities. As used in extradition treaties, even a "person who is not evading the judicial processes of a requesting state will be deemed a fugitive from the moment that he is sought for extradition, even though he neither knows that he is sought nor seeks to evade legal process." M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 828 (5th ed. 2007) (footnote omitted). Thus, "fugitive" as used in federal extradition statutes "has been held consistently to require only proof of absence from the indicting jurisdiction, regardless of the defendant's intent" to avoid prosecution. *United States v. Marshall*, 856 F.2d 896, 898 (7th Cir. 1988) (citing *Appleyard v. Massachusetts*, 203 U.S. 222, 227 (1906)). Likewise, the defendant is a fugitive for statute of limitations purposes. In relevant part, 18 U.S.C. § 3290 tolls the statute of limitations for "any person fleeing from justice." Under that statute, a defendant is a fugitive if he intends to remain outside the jurisdiction in which he is charged, and such intent "may be inferred where the defendant fails to surrender to authorities after learning of the charges against him." *Marshall*, 856 F.2d at 897–98, 900 (citing *Catino*, 735 F.2d at 722).

impasse in the case, serious jurisdictional questions, and certain pragmatic considerations—augured against applying the fugitive disentitlement doctrine. *Hijazi* was, by its own terms, limited to the "unusual circumstances of this case," *id.* at 403, many of which are not present here.

First, unlike the ongoing extradition in this case, which is proceeding expeditiously, the *Hijazi* case was at "an impasse" because the defendant resided in a country (Kuwait) that refused to extradite and, nonetheless, the district court had twice refused to rule on the defendant's motion attacking the jurisdiction of the case. *Id.* at 403. Second, pragmatic concerns—entirely absent here—made application of the doctrine inappropriate in *Hijazi*. Objecting to infringement on its "sovereignty," Kuwait sent "numerous letters" to, and held meetings with, Department of Justice officials, and refused to turn over Hijazi because it did "not believe the United States ha[d] any basis for asserting legal jurisdiction over Mr. Hijazi for acts alleged to have taken place in Kuwait." *Id.* at 405. Thus, invoking fugitive disentitlement not only distressed relations with Kuwait, but also made it less likely that Kuwait or another country would someday exercise its "discretion to extradite Hijazi if it so chooses." *Id.*

Third, *Hijazi*'s fugitive disentitlement decision reflected the case's serious jurisdictional challenges. So attenuated was *Hijazi*'s connection to the United States, and so unclear was the statute's application to "crimes [that] have been committed in a transaction . . . between two private companies operating in Kuwait" (leading Kuwait to claim that "criminal jurisdiction lies in Kuwait" alone), that *Hijazi*'s motion raised "serious questions about the reach of U.S. law." 589 F.3d at 405, 411. The Court

3

likened these fundamental questions to the separation-of-powers concern in *Cheney v. U.S. Dist. Court for D.C*, 542 U.S. 367, 382 (2004), and concluded that they (along with Kuwait's formal protests) made mandamus appropriate. 589 F.3d at 411–12.

Here, the defendant seeks to use this Court's resources to adjudicate a motion while he fights extradition. This Court should deny such efforts and give Poland the opportunity to adjudicate the government's extradition request.

## II.     If this Court Decides to Address the Merits Before the Defendant Appears, It Should Deny the Motion to Dismiss

### 1.     Defendant May Be Liable for Conspiring to Commit and Aiding and Abetting Criminal Copyright Infringement Through the Operation of Torrent Websites

Throughout his motion, the defendant invokes the concept of civil "secondary copyright liability" to argue that criminal liability cannot extend to the defendant's conduct. The defendant first claims he simply facilitated the "[t]he reproduction and distribution of mere torrent files" in a way that cannot constitute direct copyright infringement. Then, the defendant declares that civil "secondary copyright liability . . . is only a common-law theory of *civil* liability that cannot be *criminally* prosecuted absent an express act of Congress." R. 27 at 2 (emphases in original). These arguments are red herrings that should be rejected by the Court.

First, the defendant downplays the significance of "torrent" sites like the defendant's. As alleged in paragraph 1(a)–(b) of the indictment, KAT was a website that indexed specialized ".torrent" files for copyrighted content, such as movies or television programs. These indexed files enabled users to obtain copyrighted content from other users, including from the defendant's own servers. KAT therefore

4

functioned like a (lucrative) flea market for infringing movies, television shows, video games, music, and computer software. For the defendant to claim immunity from prosecution because he earned money by directing users to download infringing content from other users is much like a drug broker claiming immunity because he never touched the drugs.

But the larger flaw with the defendant's theory is that it ignores criminal conspiracy (under 18 U.S.C. § 371) and aiding and abetting (under 18 U.S.C. § 2) liability. Under § 371, the defendant bears responsibility for all reasonably foreseeable acts committed by co-conspirators that further the conspiracy. *See, e.g.*, *Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *United States v. Hach*, 162 F.3d 937, 951 (7th Cir. 1998). There is therefore no relevant distinction between "direct" and "secondary" copyright infringement within a criminal conspiracy to commit copyright infringement; a defendant is accountable for *any* act of reasonably foreseeable infringement committed by any co-conspirator that furthers the conspiracy. Likewise for aiding and abetting liability: as long as the elements of § 2 are met—for example, that the defendant aided or induced the crime's commission— he may be charged as a principal even if he did not personally commit the crime. 18 U.S.C. § 2; *United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 876 (7th Cir. 2016).

And make no mistake, § 2 applies to *all* violations of the criminal code. *See, e.g.*, *United States v. Pino-Perez*, 870 F.2d 1230, 1233 (7th Cir. 1989) ("Congress doesn't have to think about aider and abettor liability when it passes a new criminal statute, because section 2(a) attaches automatically. The question is not whether

section 2(a) is applicable—it always is."); *United States v. Jones*, 678 F.2d 102, 105 (9th Cir. 1982) ("The aiding and abetting provision of 18 U.S.C. § 2, however, is applicable to the entire criminal code."); *United States v. May*, 625 F.2d 186, 194 (8th Cir. 1980) ("We think that section 2(b), like section 2(a), is applicable to the entire criminal code."). In other words, "[a]iding or abetting is a proper basis of conviction *in every prosecution*." *United States v. Newman*, 755 F.3d 543, 545 (7th Cir. 2014) (emphasis added). The same goes for conspiracy liability under § 371, which applies to "any offense against the United States." 18 U.S.C. § 371.

If the defendant was right—that copyright law, unlike all other offenses in the criminal code, is exempt from § 2 and § 371 liability—one would certainly expect a court to have said so in the four decades since the Copyright Act's enactment. But none has, despite scores of defendants across the country who have been charged with and found guilty of conspiring and aiding and abetting copyright infringement. *See, e.g.*, *United States v. Slater*, 348 F.3d 666, 671 (7th Cir. 2003) (upholding conviction for conspiring to infringe copyrights in violation of § 371); *United States v. Cross*, 816 F.2d 297, 303 (7th Cir. 1986) (same); *United States v. Stevens*, 543 F. Supp. 929, 948 (N.D. Ill. 1982) (denying motion to dismiss indictment that charged violations of 17 U.S.C. § 506(a) and 18 U.S.C. § 2).

Despite the routine application of § 371 and § 2 to criminal copyright prosecutions, consistently followed by courts for decades, defendant now invites this Court to break new ground by relying on misleading citations. This Court should decline defendant's invitation for at least two reasons. First, the defendant cites *Sony*

*Corp. v. Universal City Studies, Inc.*, 464 U.S. 417, 434 (1984), for the proposition that "[s]econdary liability in civil copyright is a common-law creation of judges, but it is not a federal crime enacted by Congress." R. 27 at 9. But *Sony* says nothing about statutory criminal copyright violations, and even alludes to the fact that "vicarious liability is imposed in virtually all areas of the law." *Id.* at 435.

Second, the defendant asserts that "Congress specifically declined to enact statutes that would have authorized prosecution of Internet providers who link to infringing materials—the exact conduct the government seeks to prosecute here," citing two bills from 2010 and 2011. R. 27 at 9. Needless to say, legislative proposals from decades after the Copyright Act's enactment in 1976 have no logical connection to the issues here. Nor may one draw conclusions from Congressional *inaction*. *Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n. 1 (1989) ("It is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the Court's statutory interpretation." (internal quotation marks omitted)). But even putting aside these interpretive flaws, the defendant is wrong about what these recently proposed statutes involved: they sought to create *civil* actions for the Attorney General to take down websites that facilitate copyright infringement. *See Statements on Introduced Bills and Joint Resolutions*, 157 Cong. Rec. S. 2932 (May 12, 2011).[2]

---

[2] What's more, defendant ignores the savings clause for the 2011 bill, which provided that "[n]othing in this Act shall be construed *to limit* or expand civil or criminal remedies available to any person (including the United States) for infringing activities on the Internet pursuant to any other Federal or State law." S. 968, 112th Cong. § 6(a) (2011) (emphasis added).

Indeed, the only relevant legislative history—that of the Copyright Act itself—confirms that aiding and abetting liability for criminal copyright infringement was contemplated by the drafters: "The provision in present section 104 [of the Copyright Act] for aiders and abettors has been removed, but these individuals will be liable to prosecution under 18 U.S.C. § 2." *Copyright Law Revision: Hearings on H.R. 2223 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Comm. on the Judiciary* at 138, 94th Cong., 1st Sess. 157 (May 8, 1975) (statement of Irwin Goldbloom, Deputy Assistant Attorney General of the DOJ Civil Division).[3]

In sum, if users criminally infringed copyrighted works through torrent files offered on the defendant's websites—as the defendant appears to acknowledge in his motion—then the defendant and his codefendants may be charged with conspiring with and aiding and abetting those users, provided the indictment adequately alleges violations of § 371 and § 2. Nothing about the defendant's use of BitTorrent technology to carry out his crime makes him categorically above the law. This Court

---

[3] Legal scholars are also unanimous in confirming that 18 U.S.C. § 2 applies to copyright infringement. *See, e.g.*, 4 Nimmer on Copyright, at §15.01[A][2], at 15–10 (stating that abettor liability for copyright infringement is based on the general provision in 18 U.S.C. § 2); James Lincoln Young, *Criminal Copyright Infringement and a Step Beyond*, 30 Copyright L. Symp. (ASCAP) 157, 169 (1983) ("Even though this 'aid or abet' provision was eliminated from the language of section 506(a) in the 1976 Copyright Act . . . continued inclusion of such a provision in the new section 506(a) would have been merely superfluous, however, because under the provisions of 18 U.S.C. § 2, aiders, abettors, and other accessories before the fact of any offense defined as criminal by federal law are treated as principals in the commission of the offense. Therefore, there is no longer the need to include any mention of aiders or abettors in section 506(a)."); *The Criminalization of Copyright Infringement in the Digital Era*, 112 Harv. L. Rev. 1705, 1722 n.39 (1999) ("The new Act removed references to aider and abettor liability. However, because such liability was still possible under the general provision treating aiders and abettors of any federal criminal offense as principals, this change appears to be simply a removal of surplusage.").

should therefore decline the defendant's invitation to work a sea change in black-letter criminal law and immunize from prosecution those who conspire to commit and aid and abet copyright infringement.

## 2. The Indictment Validly Charges the Defendant with Conspiring to Commit and Aiding and Abetting Copyright Infringement

Having removed the distraction of secondary civil liability, this Court may readily find the indictment valid. Under the Federal Rules of Criminal Procedure, a motion to dismiss an indictment may be made only in narrow circumstances challenging certain "defects." Rather than allege such defects, the defendant argues the facts of the case—as if this Court were the jury—and presents a remarkably one-sided portrayal, contrary to governing law. This Court should deny the defendant's invitation to weigh in on the facts of the case. Whether the evidence satisfies proof beyond a reasonable doubt should be decided by a factfinder at trial.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." This rule is designed to eliminate prolix indictments and "to secure simplicity in procedure." *United States v. Debrow*, 346 U.S. 374, 376 (1953). In light of Rule 7(c)(1)'s emphasis on brevity, an indictment is tested before trial "on its face, regardless of the strength or weakness of the government's case." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010).

An indictment is legally sufficient if it: (1) states "each of the elements of the crime charged"; (2) provides "adequate notice of the nature of the charges so that the accused may prepare a defense"; and (3) allows "the defendant to raise the judgment

as a bar to future prosecutions for the same offense." *United States v. Fassnacht*, 332 F.3d 440, 444–45 (7th Cir. 2003) (citing *Russell v. United States*, 369 U.S. 749, 763–63 (1962); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). "In reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner." *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990). An indictment that "'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *White*, 610 F.3d at 958–59 (quoting *Smith*, 230 F.3d at 305).

Applying that standard and viewing the facts in the indictment in the light most favorable to the government, as this Court is required to do at this stage of the prosecution, *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999), the indictment here meets the threshold of stating the elements of the offense, providing notice to the defense about the nature of the charges, and allowing the defense to raise the judgment as a bar to future prosecutions. *See White*, 610 F.3d at 958–59.

To briefly outline the charges, Count 1 charges the defendant with a conspiracy that took place between November 2008 and July 16, 2016, in the Northern District of Illinois and elsewhere, in violation of 18 U.S.C. § 371. A properly alleged § 371 violation has the following elements: (1) an express or implied agreement between two or more people to commit a crime, (2) defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy, and (3) one of the

conspirators committed an overt act in an effort to advance the goals of the conspiracy. Seventh Circuit Criminal Pattern Jury Instructions §§ 5.08(A), 5.09. Here, the alleged crimes that the defendant and others agreed to commit are both criminal copyright infringement offenses committed willfully and for purposes of commercial advantage and private financial gain: first, infringement of at least ten copies during a 180-day period with a retail value of more than $2,500, in violation of 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b)(1); and second, infringement of a work being prepared for commercial distribution, in violation of 17 U.S.C. § 506(a)(1)(C) and 18 U.S.C. § 2319(d)(2). The charging language of Count 1, ¶ 2, properly tracks those elements and that statutory language.

The indictment, moreover, goes well beyond tracking the language of the charging statutes by containing detailed factual allegations in Count 1, ¶¶ 1 and 3-25. Paragraph 1(b) alleges that the defendant operated Kickass Torrents (KAT), "a commercial website that facilitated and promoted the reproduction and distribution of copyrighted content over the Internet without the authorization of the copyright owners." The indictment further alleges that the defendant operated torcache.net— "a commercial website that stored and hosted torrent files for the public to download, and encouraged users to upload torrent files for a variety of copyrighted content without authorization, such as movies and television shows," ¶ 1(c)—and numerous "direct download websites," including leechmonster.com, rolly.com, solarmovie.com, solarmovie.ph, iwatchfilm.com, movie2b.com, hippomovies.com, bino.tv, and moviepro.net, all "commercial websites that enabled registered users to download or

11

stream copyrighted movies and other media directly from the website, usually in exchange for a payment, without authorization from the copyright holders of that media." ¶ 1(d).

Paragraph 3 alleges that it was part of the conspiracy that the defendant and his conspirators "designed, developed, and operated KAT, torcache.net, and the direct download websites in order to encourage, induce, facilitate, engage in, and generate millions of dollars from the unlawful reproduction and distribution of copyright-protected media, including movies—some of which were still playing in theaters—television shows, music, video games, computer software, and electronic books, without the authorization of copyright holders." The indictment goes to great lengths to detail how the defendants operated KAT, ¶¶ 4–20, and the direct download websites, ¶¶ 21–25. These allegations all therefore sufficiently allege an agreement between defendant and others to commit criminal copyright infringement, and that defendant knowingly entered into that agreement to commit criminal copyright infringement. And Count 1 alleges not just one overt act, but two dozen overt acts taken to effect the objects of the conspiracy, ¶¶ 26(a)–(x). The defendant therefore has more than enough notice about the nature of Count 1.

The defendant is also charged with aiding and abetting criminal copyright infringement for purposes of commercial advantage or private financial gain: in Counts 2 through 12 by distributing a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, in violation of 17 U.S.C. § 506(a)(1)(C) and 18 U.S.C. §§ 2319(d)(2) and 2;

and in Count 13 by the reproduction and distribution of at least ten copies and phonorecords of one or more copyrighted works with a total retail value of more than $2,500 during a 180-day period, in violation of 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. §§ 2319(b)(1) and 2.

Again, the language of Counts 2 through 12 properly tracks the elements and statutory language of sections 506(a)(1)(C), 2319(d)(2), and 2. Each count alleges the approximate date of the offense, the jurisdiction, and the title of the infringed copyrighted work. In addition, each count incorporates the factual allegations from ¶ 1 of Count 1, thus incorporating the descriptions of KAT, torcache.net, and the many direct download websites. Count 13 similarly tracks the elements and statutory language of sections 506(a)(1)(A), 2319(b)(1), and 2; and, with respect to factual particulars, again incorporates the allegations from ¶ 1. Count 13 further alleges the approximate date of the offense and the jurisdiction. In fact, by explicitly alleging that the defendant aided and abetted criminal copyright infringement in these counts, the indictment actually goes *beyond* what the Seventh Circuit requires. *See, e.g.*, *United States v. Gooch*, 120 F.3d 78, 81 (7th Cir. 1997) ("It is unnecessary that the indictment specifically charge aiding and abetting.")

The defendant is therefore left to quibble about the factual allegations of the indictment, yet fails to construe those facts in the government's favor as he must do. *Yashar*, 166 F.3d at 880. Indeed, the defendant's one-sided version fails even to mention many of the allegations in the indictments. For example, the defendant claims "KAT is no more than a search engine" providing "hyperlinks," R. 27 at 6, but

ignores the allegations that the defendant and his co-conspirators did more than just link to content. Instead, as alleged, they sought out infringing material and trumpeted that to their users, targeting the infringement-minded with rewards and honors for posting torrents for copyright infringement material in order to blatantly promote and encourage the availability of entire categories of infringing works. *See, e.g.*, Indictment ¶¶ 5–12. Put differently, the indictment alleges that the defendant and his co-conspirators did far more than simply create "automated operations that copy, store, and distribute torrents." R. 27 at 12. Rather, the indictment sufficiently alleges that the defendant entered into an agreement with others to commit copyright infringement, and aided and abetted the copyright infringement of others, as §§ 2 and 371 require.

To be sure, the defendant may claim at trial that he lacked the requisite *mens rea*, or that he was too remote from the criminal activity he profited from to satisfy the elements of aiding and abetting. But willfulness, intent, and knowledge are classic subjects for the factfinder at trial, not matters to be decided by pretrial motion from the safety of a foreign jurisdiction.

In other words, far from the freewheeling inquiry into the allegations that the defendant urges, as if sitting as the jury, the test of an indictment's validity is more circumscribed. And given that the indictment here has provided the defendant with more than "adequate notice of the nature of the charges so that the accused may prepare a defense," *Fassnacht*, 332 F.3d at 444–45, the indictment is valid.

### 3. The Indictment Properly Charges Infringement in the United States

Next, the defendant claims the indictment is defective for failing to claim "specific allegation[s] of actual infringements in the territory of the United States." R.27 at 16. This argument is equally meritless.

Under the so-called "predicate–act doctrine," the Copyright Act applies to extraterritorial conduct "as long as some act of infringement occurred in the United States." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012); *see also Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998); *Update Art, Inc. v. Modin Publ'g Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). The vast majority of courts agree that there is no requirement that the infringing act occur "entirely" within the United States—only that the infringing act not take place *entirely* abroad. *See, e.g.*, *Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008); *Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) (*en banc*) ("[W]e reaffirm that the United States copyright laws do not reach acts of infringement that take place entirely abroad.").

Consistent with this requirement, the indictment provides adequate notice of infringement occurring within the United States. Count 1, ¶ 1(b), alleges, for example, that "[m]illions of members were registered with KAT, many of whom resided in the United States." The indictment then alleges in ¶ 4, "It was further part of the conspiracy that defendants Artem Vaulin . . . made available and caused others to make available without authorization vast amounts of copyrighted content on KAT to millions of individuals in the United States by collecting and uploading torrent

files to KAT, and soliciting and inducing KAT's registered users to upload torrent files to KAT, a significant portion of which were torrent files for content protected by United States copyright laws." Other allegations in the indictment must be read in light of these background paragraphs, including, for example, Counts 2 through 13, which allege the substantive criminal copyright infringement charges, as well as Count 1, ¶ 5 (alleging that the defendants "operated and caused others to operate torcache.net to store and maintain the torrent files for infringed copyrighted content uploaded by KAT users and others, and to enable KAT's users and the general public to download those files") and ¶ 15 (alleging that the defendants "operated and caused others to operate a direct download feature on KAT to enable users to download copyright-protected material directly from the website httptorrents.com, which was operated by the defendants and others"). Defendant is free to defend at trial that the government has not proven an infringing act in the United States beyond a reasonable doubt, but at this stage, the defendant is sufficiently on notice of the alleged infringement within the United States.

### 4. The Indictment's Allegations Regarding the Direct–Download Websites Are Not Vague

Finally, the defendant largely ignores the allegations regarding his operation of the direct download websites, perhaps because he cannot mischaracterize those as mere "search engines." Instead, the defendant complains that the "[a]llegations that defendants stored or distributed infringing materials are scattered, skimpy or vaguely general." R. 27 at 14. Once again, the defendant fundamentally misunderstands the role of an indictment in criminal practice. It need not—indeed,

16

should not—offer a detailed recitation of the government's evidence. Here, the indictment identifies the many direct download websites by name and describes how they operated. Indictment ¶ 1(d). In Counts 2 through 13, the indictment identifies the relevant time period of infringement and the location, and in Counts 2 through 12, the indictment identifies the title of the infringed copyrighted work. These allegations are plain, concise, and definite, precisely all that is required by the Federal Rules of Criminal Procedure and the relevant case law.[4] The defendant thus has sufficient notice of the nature of the charges against him.

## III.  CONCLUSION

At its core, the defendant's argument is nothing more than an assertion that the government cannot prove the allegations in the indictment beyond a reasonable doubt. But the proper way for a defendant to challenge the sufficiency of the evidence against him is by exercising his right to a jury trial—not by asking this Court to dismiss an indictment properly returned by the grand jury. For this reason, in judging the sufficiency of an indictment, courts "do not consider whether any of the charges have been established by evidence or whether the government can ultimately prove its case." *White*, 610 F.3d at 959. The government stands ready to prove its case if the defendant proceeds to trial, and should be allowed that opportunity.

---

[4] The defendant's entire argument with respect to Counts 14, 15, and 16 consists of the following: "Obviously, the money laundering charges containing in Counts Fourteen through Sixteen depend on underlying predicates of criminal copyright infringement. Because Counts One through Thirteen fails to state an offense, the dependent money laundering counts must also be dismissed." R.27 at 16–17. For the reasons discussed above, this Court should reject this theory. The money laundering charges, like the charges for criminal copyright infringement, fully comply with Rule 7(c)(1).

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to dismiss the indictment.

Dated:      November 4, 2016      Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By:    */s/ William E. Ridgway*
WILLIAM E. RIDGWAY
DEVLIN N. SU
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 469-6233

RYAN K. DICKEY
Senior Counsel
Criminal Division, Computer Crime and
Intellectual Property Section
1301 New York Avenue NW
Washington, DC 20005
(202) 616-1509