UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.   16 CR 438-1 |
| | ) | |
| ARTEM VAULIN | ) | Honorable John Z. Lee |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ARTEM VAULIN'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT**

Ira P. Rothken
Jared R. Smith
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net
*Counsel for Artem Vaulin, Pro Hac Vice*

Theodore T. Poulos
Marty Basu
Cotsirilos, Tighe, Streicker, Poulos & Campbell
33 North Dearborn Street
Suite 600
Chicago, Illinois  60602
(312) 263-0345
*Local Counsel for Artem Vaulin*

# TABLE OF CONTENTS

page

I.     Introduction …………………………………………………….…………...    1

II.    Defendant VAULIN's Reply to the Response of the United States ……………..    7

    A.    A Theory of Aiding and Abetting Fails to Incriminate Alleged …………    7
        Operations of Defendant's Torrent Sites.

        1.    A theory of aiding and abetting is unavailable to the government ...    7
               but if it is it still requires identification of
               illegal activity along with knowing and purposeful
               assistance of the defendant that helps such illegal activity.

        2.    There is no allegation of a criminal infringement ………………...    8
               committed by a principal.

        3.    There is no allegation or basis to allege that Defendant knew ……    11
               of and intended to bring about a future offense against the
               United States when it provided a torrent file to a user.

    B.    The Response Duplicitously Conflates an Agreement by ………………..    13
        Individuals to Operate a Non-Criminal Torrent Site with
        Non-existent Agreements with Visitors to Commit Copyright Crimes.

    C.    Prosecutorial Overreach Shown in the Indictment ………….    15
        Cannot Be Glossed Over by Vague References to Evidence at Trial.

    D.    The Court Should Find "Unusual Circumstances" That Authorize ………    15
        Its  Deciding the Motion to Dismiss in the Abusive Extra-Territorial
        Projection of *In Terrorem* power by the United States in Violation of
        Principles of the Constitution, Prudential Justice and Copyright Law.

III.    Conclusion ……………………………………………………………………..    18

## INDEX OF AUTHORITIES

**CASES**

*BC Tech., Inc. v. Ensil Int'l Corp.*, 464 Fed. Appx. 689 (10th Cir. 2012)............................... 12, 13

*Branzburg v. Hayes*, 408 U.S. 665 (1972) .................................................................................... 17

*Chambers v. NASCO, Inc.*, 501 U. S. 32 (1991) ........................................................................... 17

*Columbia Artists Management, Inc.*, 443 F.2d 1159 (2d Cir. 1971) ............................................ 10

*Degen v. United States*, 517 U.S. 820 (1996) ......................................................................... 16, 17

*Dowling v. United States*, 473 U.S. 207 (1985) ............................................................. 1, 7, 10, 15

*Flava Works v. Gunther*, 689 F.3d 754 (7th Cir. 2012) ................................................................. 9

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir.1996)............................................. 10

*Hard Rock Café Licensing v. Concession Services*, 955 F.2d 1143 (7th Cir.1992) .................... 10

*In re Hijazi*, 589 F.3d 401 (7th Cir. 2009) .............................................................................. 15, 16

*Ingram v. United States*, 360 U.S. 672 (1959) ............................................................................. 14

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. 1992) ............................................................. 9

*Levine v. United States*, 362 U.S. 610 (1960) .............................................................................. 17

*Liparota v. United States,* 471 U.S. 419 (1985).......................................................................... 1, 15

*London-Sire Records, Inc.* v. Doe 1, 542 F. Supp. 2d 153 (D. Mass. 2008) ........................... 4, 13

*Marobie-Fl, Inc. v. National Ass'n of Fire and Equip. Distrib. and Northwest Nexus, Inc.*, 983
    F.Supp. 1167 (N.D. Ill. 1997) ................................................................................................... 9

*MGM Studios v. Grokster*, 545 U.S. 913, 930 (2005) ................................................................... 3

*Monotype Imaging, Inc., v. Bitstream, Inc.* 276 F.Supp.2d 877 (N.D. Ill. 2005) ................... 9, 10

*Nash v. Hepp*, 740 F.3d 1075 (2014) ............................................................................................ 17

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir.2007) ....................................... 10, 11

*Perfect 10, Inc. v. CCbill Llc*, 488 F. 3d 1102 (9th Cir. 2007) .................................................... 13

*Pinkerton v. United States*, 328 U.S. 640 (1946).......................................................................... 14

*Rosemond v. United States*, 134 S.Ct. 1240 (2014) .................................................................... 12, 14

*SEC v. Homa*, 514 F. 3d 661 (7th Circuit 2008) ......................................................................... 17

*Skilling v. United States*, 561 U.S. 358, 410 (2010) ........................................................ 1, 7, 15

*Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ................................................ 1

*U.S. v. LaMacchia*, 871 F.Supp. 535 (D.C. Mass., 1994) ............................................... 1, 3, 7, 15

*United States v. Adams*, 789 F.3d 713 (7th Cir. 2015) ............................................................. 14

*United States v. Atherton*, 581 F.2d 747 (9th Cir. 1977) .......................................................... 9

*United States v. Bokhari*, 993 F.Supp.2d 936 (2014) ................................................................ 16

*United States v. Cross*, 816 F.2d 297 (7th Cir. 1987) .......................................................... 12, 13

*United States v. Gold*, 470 F.Supp. 1336 (N. D. Ill. 1979) ...................................................... 17

*United States v. Hastings*, 461 U.S. 499 (1983) ........................................................................ 17

*United States v. Heath*, 188 F.3d 916 (7th Cir.1999) ................................................................ 8

*United States v. Jarret*, 447 F.3d 520 (7th Cir. 2006) .............................................................. 17

*United States v. Lanier*, 520 U.S. 259 (1997) ..................................................................... 1, 15

*United States v. Laraneta*, 700 F.3d 983 (7th Cir. 2012) ......................................................... 17

*United States v. Li Xin Wu*, 668 F.3d 882 (2011) ...................................................................... 8

*United States v. Liu*, 731 F.3d 982 (9th Cir. 2013) ............................................................. 12, 13

*United States v. Mekjian*, 505 F.2d 1320 (5th Cir. 1975) .......................................................... 14

*United States v. Moran*, 757 F. Supp. 1046 (D. Neb. 1991) ................................................ 12, 13

*United States v. Newman*, 755 F.3d 543 (7th Cir. 2014) .......................................................... 12

*United States v. Pino-Perez*, 870 F.2d 1230, 1236 (7th Cir. 1989) ........................................... 7

*United States v. Sewell*, 159 F.3d 275, 278 (7th Cir.1998) ........................................................ 8

*United States v. Valencia*, 907 F.2d 671 (7th Cir. 1990) ......................................................... 11

*United States v. Wiltberger*, 18 U.S. 76, 95 (1820) ................................................................... 10

*United States v. Zafiro*, 945 F.2d 881 (1991), *aff'd on other grounds* 506 U.S. 534 (1993).......... 8

**STATUTES**

17 U.S.C. § 506 .................................................................................................. 8, 13

**OTHER AUTHORITIES**

4 Nimmer on Copyright § 15.01 ................................................................................ 9

House Report, Copyright Felony Act, H.R. Rep. No. 997, 102nd Cong., 2nd Sess. 1992, 1992 U.S.C.C.A.N. 3569, P.L. 102-561 ............................................................................... 14

Manta, Irina D.,The Puzzle of Criminal Sanctions for Intellectual Property Infringement, 24 Harv. J.L. & Tech. 469, 481 (2011)............................................................................ 3

Prosecuting Intellectual Property Crimes, 4th Ed., OLE Litigation Series, https://www.justice.gov/sites/default/files/criminal-cips/legacy/2015/03/26/prosecuting_ip_crimes_manual_2013.pdf...................................... 2, 9

## I.     Introduction

In his Opening Memorandum, defendant Artem Vaulin identified major defects in the

Indictment in this case, including:

(a) duplicitous allegations of (1) non-criminal activity of running a torrent site with

(2) unspecified crimes committed while running quite different "direct download sites;"

(b) failure to allege even a single actual criminal infringement occurring within the

territory of the United States; and

(c)  violations of constitutional principles of separation of powers and due process and of

prudential principles of copyright law that prohibit the prosecution from inventing new crimes of

"running a torrent site" or "encouraging copyright infringement."[1]

The Response of the United States is to ignore Vaulin's constitutional and prudential

authorities (see Response at 6-7) and to declare that "the proper vehicle for challenging the

sufficiency of the government's evidence is a trial, not a motion to dismiss an indictment

properly returned by the grand jury."  (Response at 1.)  The failure of the Response to address

defendant's showing of an improper indictment tacitly admits the impropriety.  For example, the

failure to allege even a **single** copyrighted work uploaded, stored, or downloaded to/from such

"direct download sites" is not a mere administrative issue it is fatal to the indictment for criminal

copyright infringement. The general video streaming alleged in the indictment cannot be

prosecuted as a felony. There is no crime of making available a torrent file. This prosecution

---

[1] See *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984); *Liparota v. United States,*
471 U.S. 419 (1985); *Dowling v. United States*, 473 U.S. 207 (1985); *United States v. Lanier*,
520 U.S. 259 (1997); *Skilling v. United States*, 561 U.S. 358 (2010); *U.S. v. LaMacchia*, 871
F.Supp. 535 (D.C. Mass., 1994), all cited in defendant's Opening Memorandum.

violates guidelines set forth in a "Prosecuting IP Crimes Manual" publically posted by the Department of Justice. [2]

Sections 26(j) and (v) in the indictment discuss the approximately 11 copyrighted "works in suit" or the works alleged to be criminally infringed and it is limited to allegations of torrent files found on a torrent search engine site in 2016 – most notably not Kickasstorrents.com which was apparently off line by 2011. No actual infringers or infringements and the factual basis for felony direct infringements were alleged in the indictment. The Response fails to counter the overwhelming authorities provided in the motion to dismiss that the storage or transfer of dot torrent files is not direct infringement.

More fatal to the indictment - there are no facts alleged that such works were uploaded, stored, or downloaded from "direct download sites."

Notwithstanding the government's erroneous theories of criminal copyright infringement Kickasstorrents.com appeared to seize activity outside the applicable five year criminal copyright statute of limitations period cut off and the indictment appears to contain an error that cannot be reconciled with the government's own sworn evidence.[3] There is little effort to tie with sufficient alleged facts, beyond speculation, the above 2016 torrent site to Artem Vaulin rendering the entire indictment improper.

In another attempt to criminalize torrent sites, the Response asserts a theory of "aiding and abetting," presenting various historical citations.  (Response at 7-8.)  **But aiding and**

---

[2]  Prosecuting Intellectual Property Crimes, 4th Ed., OLE Litigation Series, https://www.justice.gov/sites/default/files/criminal-cips/legacy/2015/03/26/prosecuting_ip_crimes_manual_2013.pdf

[3] The indictment seems to indicate the kickasstorrents.com operated until 2012 while the US investigator affidavit attachment to the criminal complaint on file in this case indicates until 2011.

**abetting was removed from the Copyright Act by Congress in 1976 thereby <u>eliminating</u> the crime.** The only Federal Court to consider the issue, *LaMacchia*, supra n. 1, set forth an integrated historical review and stated that: "In 1976, Congress revamped the Copyright Act by eliminating the crime of aiding and abetting copyright infringement." (871 F.Supp. at 539.) *See also* Manta, Irina D., The Puzzle of Criminal Sanctions for Intellectual Property Infringement, 24 Harv. J.L. & Tech. 469, 481 (2011) ("Several years later, countering what had been a trend of expansion in the area of criminal sanctions, the Copyright Act of 1976 eliminated the provisions for aiding and abetting . . .").

The government argues that KAT's operators "sought out infringing material and trumpeted that to their users, targeting the infringement minded with rewards and honors for posting torrents for copyright infringement material…the indictment sufficiently alleges that defendant entered into an agreement with others to commit copyright infringement, and aided and abetted the copyright infringement of others." (Response at 14.) The government alleges that defendant "facilitated and promoted" copyright infringement. (*Id*. at 11, quoting Indictment § 1(b); see also Response at 13 ("encourage, induce, facilitate"). The Indictment and the Response thus allege an invented crime of "encouraging or inducing copyright infringement" — which is the essence of a civil claim arising out of Judge made case law, especially *MGM Studios v. Grokster*, 545 U.S. 913, 930 (2005) as discussed in the Opening Memorandum at 9.

The aiding and abetting theory, while not applicable due to its elimination by Congress from the Copyright Act, will be addressed *arguendo* below, and it does not justify invention of a new crime of "encouraging copyright infringement." Aiding and abetting is applied to an accessory to an actual crime committed by a principal and no such actual crime is alleged in the Indictment.

Apparently, under the prosecution's aiding and abetting theory, actual perpetrators of statutory crimes are potentially scattered among the "millions of individuals in the United States" alleged in ¶ 4 of the Indictment to have had access to KAT. There is no actual perpetrator identified in the Indictment whom defendant Vaulin might have aided or abetted and no specifications of elements of actual statutory copyright crimes. There is no allegation that supports the nature of any primary infringement one is left to guess if a user left the KAT site and later, in the Bittorrent network generally, was engaged in activity that could be punishable as a misdemeanor or through civil liability or one that cannot be punishable at all such as being "extraterritorial". Defendants cannot commit a felony, as articulated in the indictment, by conspiring or aiding and abetting a KAT user to commit no infringement or an extraterritorial infringement, misdemeanor infringement, or civil infringement. An investigator downloading a torrent file and then leaving the site behind to create in the Bittorrent Network a content file does not pass muster for a felony. *See London-Sire Records, Inc*. v. Doe 1, 542 F. Supp. 2d 153, 166 D. Mass. 2008 (stating that copyright holder's investigator's "own downloads are not themselves copyright infringements because it is acting as an agent of the copyright holder, and copyright holders cannot infringe their own rights").

This Court should decline the government's invitation by implication to find that the general Bittorrent ecosystem and "network" and unknown users are copyright felons under US law or that Bittorrent technology and the network are not protected by the *Sony* doctrine where they are a dual use technology capable of substantial non infringing uses.

Indeed, beyond the failure to raise a proper direct infringement, conspiracy, and aiding and abetting theory of copyright infringement, the failure to allege facts to support that the direct infringements occurred in the United States is also fatal to all the counts. The Court in *Subafilms*

4

articulated the limited reach of US jurisdiction arising from the Copyright Act:

"Even assuming *arguendo* that the acts authorized in this case would have been illegal abroad, we do not believe the distinction offered by Appellees is a relevant one. Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending "no farther than the [United States'] borders." 2 Goldstein, *supra,* § 16.0, at 675. *See, e.g., Robert Stigwood,*530 F.2d at 1101 (holding that no damages could be obtained under the Copyright Act for public performances in Canada when preliminary steps were taken within the United States and stating that "[t]he Canadian performances, while they may have been torts in Canada, were not torts here"); *see also Filmvideo Releasing Corp. v. Hastings,* 668 F.2d 91, 93 (2d Cir.1981) (reversing an order of the district court that required the defendant to surrender prints of a film because the prints could be used to further conduct abroad that was not proscribed by United States copyright laws)."

The indictment not only fails to alleged sufficient facts to support direct infringement occurring in the United States but fails to allege sufficient facts to support that the mere torrent files for the "works in suit" or "works in the indictment" came from servers in the United States or servers tied to Artem Vaulin. The government cannot equate having a US domain name or US email server to having servers in the United States for the dot torrent files at issue. In addition, the torrent files allegedly related to the "works in the indictment" were apparently obtained in 2016 from foreign servers.

The indictment, distilled to its essence, is based on 11 torrent files downloaded from a foreign server in 2016 with a speculative relationship to Artem Vaulin based on someone's use of the name "kickasstorrents" in relation to the site.

Defendant is charged only with "making available" and "enabling," not with actual

infringements. (Response at 15-16.) The government cannot conflate KAT's automated "making available" a torrent file with a speculative subsequent knowing and willful direct copyright infringement offense against the United States.

In sum, the attempt to hold KAT's overseas torrent sites as accessories to unspecified copyright crimes committed in unknown ways in the United States by unknown former KAT users is unprecedented and violates multiple constitutional prohibitions. The indictment is so permeated with improper legal theories and insufficient predicate facts to support the elements of felony criminal claims - from improperly conflating dot torrent files into direct criminal infringement to improperly alleging video streaming as a crime that it cannot be trusted that the grand jury was properly instructed with the correct law and legal principles to render a competent decision. Given the problems with the indictment the Court ought to provide extra scrutiny and less deference.

The government initially argues that, in an exercise of discretion, the Court should delay ruling on the motion until defendant personally appears. Defendant has been arrested and incarcerated for a non-existent crime of "making available" 11 torrent files. The government seeks to shield its wrongful inventions of new crimes from judicial scrutiny for a protracted period by charging overseas defendants and by invoking the fugitive disentitlement doctrine. That doctrine is based on inherent powers of the court; such powers should not be subverted for the abusive purposes of this prosecution.

Therefore, the Motion to Dismiss should be granted at the earliest opportunity.

II.   **Defendant VAULIN's Reply to the Response of the United States**

    A.   **A Theory of Aiding and Abetting Fails to Incriminate Alleged Operations of Defendant's Torrent Sites.**

        1.   A theory of aiding and abetting is unavailable to the government, but if it is it still requires identification of illegal activity along with knowing and purposeful assistance of the defendant that helps such illegal activity.

As indicated above, aiding and abetting criminal copyright infringement was eliminated by Congress in 1976. Given that *Dowling* teaches us that the Copyright Act in essence occupies the field for alleged copyright criminal theories, that Congress in 1976 removed aiding and abetting from the Copyright Act, that the only Federal Court, in *LaMacchia,* to address the issue interpreted the congressional removal as "eliminating the crime", and that the "rule of lenity" articulated in *Skilling* and its progeny resolves competing arguments on statutory interpretation in the light most favorable to the defendant, then this body of law all unites to conclude that aiding and abetting copyright infringement in the context of this indictment fails as a matter of law.

Under principles set forth in *LaMacchia*, *Dowling* and *Skilling*, supra n. 1, the government cannot suddenly invoke and expand an aiding and abetting theory and make it into an independent copyright crime.

If, *arguendo*, there is a valid application of aiding and abetting theories to copyright crimes, guilt of an accessory is predicated on illegal acts of a principal perpetrator. Here, on the other hand, the government ignores principal perpetrators and alleges duplicitously that the alleged accessory is also the principal perpetrator.

As stated in *United States v. Pino-Perez*, 870 F.2d 1230, 1236 (7th Cir. 1989):

… an aider and abettor is punishable as a principal — that is, punishable under the statute creating the offense that he was found to have aided and abetted.

Elements of an aiding and abetting offense were summarized in *United States v. Zafiro*, 945 F.2d 881, 887 (1991), *aff'd on other grounds* 506 U.S. 534 (1993) (emphases in original):

> The crime of aiding and abetting requires ***knowledge*** of the illegal activity that is being aided and abetted, a ***desire*** to help the activity succeed, and some ***act*** of helping.

In *United States v. Li Xin Wu*, 668 F.3d 882, 885 (2011), the court stated:

> Knowing association is important for accessory liability because it prevents the conviction of a person on a guilt-by-association theory: someone who is "simply passively present during the transaction" should not be convicted of aiding and abetting that transaction. *United States v. Heath*, 188 F.3d 916, 921 (7th Cir.1999). The prosecution must instead also "show that the defendant shared the principal's criminal intent," *United States v. Sewell*, 159 F.3d 275, 278 (7th Cir.1998); it does so by proving "knowing association."

      2.      There is no allegation of a criminal infringement committed by a principal.

In order to hold defendant Vaulin as an aider and abettor, there must have been a principal who violated 17 U.S.C. § 506 by willfully committing infringements in the United States: "for purposes of commercial advantage or private financial gain" (§ 506(A)); or by reproducing or distributing copies which have a total retail value in excess of $1,000 (§ 506(B)); or by distribution of a work being prepared for commercial distribution with actual or constructive knowledge thereof (§ 506(C)). Neither Vaulin nor KAT committed such infringements through operations of a torrent site. As discussed infra, they could not have had the knowing willfulness that is required for commission of a copyright crime or for an aiding and abetting theory or for a conspiracy.

No "illegal activity" – no specific commission of a copyright crime in the United States – is alleged as to which defendant Vaulin and KAT had the requisite knowledge, desire and helpful action needed to be held as aiders and abettors. (*Zafiro*, supra.) Alleged offenses of KAT are only stated as "making available" and "enabling." (Response at 15-16.)

Civil principles are not a "distraction." (Response at 9.) As shown in defendant's Opening Memorandum at 7, principles of civil copyright law and criminal copyright law make up an integrated body of regulations. Online activities protected by courts in a civil context cannot be criminalized by a novel theory. See *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. 1992) (noting that conduct that does not support a civil action for infringement cannot constitute criminal infringement); 4 Nimmer on Copyright § 15.01, supra.

In *Flava Works v. Gunther*, 689 F.3d 754, 761 (7th Cir. 2012), the court vacated an injunction and held that a "video bookmarking" website that provided embedded video streams was neither a direct nor a contributory infringer:

> The direct infringers in this case are the uploaders; myVidster is neither a direct nor a contributory infringer — at least of Flava's exclusive right to copy and distribute copies of its copyrighted videos.

The government's sweeping "aiding and abetting" theory, applied e.g., to "direct download sites," could improperly criminalize video streaming that is protected under *Flava Works*.[4]

In a civil theory of contributory copyright infringement, the first element is "direct infringement by a primary infringer." *Monotype Imaging, Inc., v. Bitstream, Inc.* 276 F.Supp.2d 877, 883 (N.D. Ill. 2005), citing *Marobie-Fl, Inc. v. National Ass'n of Fire and Equip. Distrib. and Northwest Nexus, Inc.*, 983 F.Supp. 1167, 1178 (N.D. Ill. 1997). Similarly, as to copyright crimes, see *United States v. Atherton*, 581 F.2d 747, 759 (9th Cir. 1977); Nimmer, supra, at § 1501[A][2] (elements of a copyright crime are stated as: "(1) Infringement of a copyright, (2) of

---

[4] The "Prosecuting IP Crimes Manual," supra, n. 2, at p. 77 notes *lacunae* in § 506 as to video streaming **not** being a felony as it does not implicate the reproduction and distribution rights and discusses proposals "to amend criminal copyright penalties to address significant cases involving Internet streaming."

a work that not been the subject of a 'first sale,' (3) done willfully, (4) with knowledge that the copyrighted work has not been the subject of a 'first sale,' and (5) for profit.")

In *Monotype Imaging*, absence of evidence of direct infringements doomed plaintiff's civil claims for secondary liability. (*Id*. 276 F.Supp.2d at 885-887.) As to crimes, see Defendant's Opening Memorandum at 16 (requirement of "actual dissemination").[5]

Similarly, an aiding and abetting theory would clash with another civil theory of secondary liability, namely, vicarious liability:

> "[A] defendant is vicariously liable for copyright infringement if it has 'the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'"
> (*Hard Rock Café Licensing v. Concession Services*, 955 F.2d 1143, 1150 (7th Cir.1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971)).)

In *Perfect 10, Inc. v. Amazon.com, Inc*., 487 F.3d 701, 730 (9th Cir.2007), the court declined to apply a "vicarious liability" theory to a search engine, because, *inter alia:*

> Perfect 10 has not demonstrated a likelihood of showing that Google has the legal right to stop or limit the direct infringement of third-party websites. [Citation.] Unlike *Fonovisa*[*, Inc. v. Cherry Auction, Inc*., 76 F.3d 259 (9th Cir.1996)], where by virtue of a "broad contract" with its vendors the defendant swap meet operators had the right to stop the vendors from selling counterfeit recordings on its premises, *Fonovisa*, 76 F.3d at 263, Perfect 10 has not shown that Google has contracts with third-party websites that empower Google to stop or limit them from reproducing, displaying, and distributing infringing copies of Perfect 10's images on the Internet.

---

[5] The Prosecutor's Manual, supra, at p. 45 analyzes "making available" language in § 506 and concludes (emphasis added) that "courts deciding criminal cases are likely to require proof of ***actual dissemination of copies***, as opposed to evidence that the defendant merely 'made [infringing works] available,' if only to satisfy the rule of lenity. See *United States v. Wiltberger*, 18 U.S. 76, 95 (1820); *Dowling v. United States*, 473 U.S. 207, 213, 228-29 (1985) (applying rule of lenity to construe stolen property laws narrowly in light of copyright law). Moreover, courts might consider Congress's choice not to punish attempts in § 506 as further evidence that distribution, in criminal cases, requires an actual transfer of an infringing copy to the public."

Typing into Google's search engine each of the alleged works in the Indictment with the word "torrent" leads to "page one" results with automated descriptions and links to torrent file landing pages.   Under the Government's new and unbridled theory, Google could be indicted.

As in *Perfect 10*, supra,, there is no allegation in the present Indictment that KAT has any ability, right or power to stop or limit crimes against the United States committed by third-party users who visit KAT and later enter into the general bittorrent ecosystem.   The user acquires a torrent file from KAT (or from Google) and departs.  The users then access different kinds of Internet resources that performs functions based on information in the torrent file and that may or may not connect the user to a swarm of users.  Apparently, the government speculates that some former users of KAT probably engaged in copyright infringements that probably had a nexus with the United States and that also probably had enhancement elements of statutory crimes.

An indictment against an aider and abettor cannot properly be predicated on such vague and speculative charges.  Since the aider and abettor is punished the same as a principal, the government is claiming the power to invent new crimes of secondary copyright infringement that do not require actual infringements and that overthrow established protections of civil infringement law.  Such a claim cannot be sustained.  Only Congress can invent new crimes of secondary copyright infringement and Congress has not so acted.  Therefore, the Motion to Dismiss should be granted.

> 3.    There is no allegation or basis to allege that Defendant knew of and intended to bring about a future offense against the United States when it provided a torrent file to a user.

The state of mind required for conviction as an aider and abettor is the same state of mind as that required for the principal offense. (*United States v. Valencia*, 907 F.2d 671, 680-681 (7th Cir. 1990).)

The copyright statute itself specifies a high level for the "willfulness" mental state of a copyright crime. "Evidence of reproducing and distributing copyrighted works does not, by itself, establish willfulness." (17 U.S.C. § 506(a)(2).) Thus, under a willfulness standard, allegations of indifference, recklessness, or negligence is insufficient to constitute criminal copyright infringement. "Willfully" in § 506(a) means a "voluntary, intentional violation of a known legal duty." (*United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013). Proof of "defendant's specific intent to violate someone's copyright is required." Id. at 989-90. If § 506(a)'s willfulness requirement were read "to mean only an intent to copy, there would be no meaningful distinction between civil and criminal liability in the vast majority of cases." *Id.* See also *BC Tech., Inc. v. Ensil Int'l Corp.*, 464 Fed. Appx. 689, 696 (10th Cir. 2012).

> The courts have held that it is not enough for the defendant in a criminal case to have had an intent to copy the work; he must have acted with knowledge that his conduct constituted copyright infringement. See, e.g., *United States v. Cross*, 816 F.2d 297, 300 (7th Cir. 1987) and *United States v. Moran*, 757 F. Supp. 1046 (D. Neb. 1991).
> (Congressional testimony of the Registrar of Copyrights posted at http://www.copyright.gov/docs/2265_stat.html)

In *Cross*, supra, the court upheld a jury instruction that defined "willfully" as an act committed "with knowledge that it was prohibited by the law, and with the purpose of violating the law." (816 F.2d at 300.).

> In *Rosemond v. United States*, 134 S.Ct. 1240 (2014), the Supreme Court concluded that: a person aids or abets a firearms crime when he participates in joint criminal activity, seeks to promote its objective, and knows that a confederate has a gun, in time to "do something with [that knowledge] — most notably, opt to walk away." 134 S.Ct. at 1249-50.
> (*United States v. Newman*, 755 F.3d 543, 546 (7th Cir. 2014).)

The Response declares: "the alleged crimes that the defendant and others agreed to commit are [] criminal copyright infringements committed willfully…" (Response at 11.) The Response contradicts the facts alleged in the Indictment. All that defendant allegedly did to "aid

and abet" was to provide a torrent file. Under civil law, provocative file or domain names in a search engine index, including those that contain words like "illegal" are insufficient to give notice of potential infringing activity. *Perfect 10, Inc. v. CCbill Llc*, 488 F. 3d 1102 (9th Cir. 2007); see also *London-Sire Records, Inc*. v. Doe 1, 542 F. Supp. 2d 153, 166 (D. Mass. 2008) (authorized investigators do not commit copyright infringements.).

Another defect is the attempt to inflate KAT's automated processes into "defendant's specific intent to violate someone's copyright." (*Liu*, supra; *BC Tech., Inc.*, supra.) At most there is only "an intent to copy" that may be sufficient under civil law but not criminal law. (*Liu*, *Cross*, *Moran*.)

In sum, the Indictment not only lacks allegations of specific federal crimes, but, in addition, the nature of KAT's operations is such that defendant could not willfully, knowledgeably or intentionally have participated in federal crimes of persons who first visited KAT and then later "possibly" committed offenses against the United States. Therefore, the Motion to Dismiss should be granted.

**B.** **The Response Duplicitously Conflates an Agreement by Individuals to Operate a Non-Criminal Torrent Site with Non-existent Agreements with Visitors to Commit Copyright Crimes.**

The description of the alleged conspiracy in the Response (pp. 10-13) fails to specify an "express or implied agreement between two or more people to commit a crime" that is required in a "properly alleged § 371 violation." (*Id*. at 10.) Although the government asserts that "the indictment sufficiently alleges that defendant entered into an agreement with others to commit copyright infringement, and aided and abetted the copyright infringement of others," (Response at 14), no actual act of copying, distribution or publication in violation of 17 U.S.C. § 506(a) is set forth in the Indictment. No actual agreement to commit a crime is identified, only allegations

that KAT's operators "sought out infringing material and trumpeted that to their users, targeting the infringement minded with rewards and honors for posting torrents for copyright infringement material…the indictment sufficiently alleges that defendant entered into an agreement with others to commit copyright infringement." (Response at 14.)

The Response neglects defendant's argument on the absence of a "meeting of the minds as to the commission of a crime" that is the essence of conspiracy. (Opening Memorandum at 11.) Instead the Response is duplicitous. Perhaps the allegations are that the named defendants agreed to run a torrent site; if so, that agreement is not subject to § 371 because running a torrent site is not a crime.

As in aiding-and-abetting discussed supra, conspiracy requires a union of criminally willful conduct on the part of an actual infringer and criminally willful conduct on the part of a conspirator. As stated in *United States v. Adams*, 789 F.3d 713, 714 (7th Cir. 2015) "*Rosemond* adapted the rules of aiding-and-abetting liability to make them more like the *Pinkerton* approach to conspiracy," citing *Rosemond*, supra, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

As in aiding and abetting, a conspiracy theory requires infringements that are willfully and purposefully committed with knowledge of the offense. See *Ingram v. United States*, 360 U.S. 672, 677-678 (1959) (conspiracy requires an agreement to commit an offense against the United States and conspirator must have at least the degree of criminal intent necessary for the substantive offense); *United States v. Mekjian*, 505 F.2d 1320, 1324 (5th Cir. 1975) (dismissing indictment that failed to allege willfulness). "Even if civil liability has been established, without the requisite mens rea it does not matter how many unauthorized copies or phonorecords have been made or distributed: No criminal violation has occurred." House Report, Copyright Felony Act, H.R. Rep. No. 997, 102nd Cong., 2nd Sess. 1992, 1992 U.S.C.C.A.N. 3569, P.L. 102-561.

14

**C.**     **Prosecutorial Overreach Shown in the Indictment Cannot Be Glossed Over by Vague References to Evidence at Trial.**

In his Opening Memorandum at 9-11, defendant showed that the prosecutor's invention of new crimes is prohibited by *Liparota v. United States*, 471 U.S. 419, 424 (1985) (crimes are "solely creatures of statute"); *Dowling v. United States*, 473 U.S. 207, 228 (1985) ("[T]the deliberation with which Congress . . . has addressed the problem of copyright infringement for profit, as well as the precision with which it has chosen to apply criminal penalties in this area, demonstrates anew the wisdom of leaving it to the legislature to define crime and prescribe penalties"); *Skilling v. United States*, 561 U.S. 358, 410 (2010) (the "rule of lenity") and *United States v. Lanier*, 520 U.S. 259, 266 (1997) ("[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope").

Defendant further relied on *U.S. v. LaMacchia*, 871 F.Supp. 535 (D.C. Mass., 1994) where the court held that defendant innovator of a novel form of online services could not be indicted pursuant to existing statutes. A similar result regarding torrent files is required here.

The Response does not mention the foregoing cases or respond to arguments based on the Constitution and principles of copyright law. Apparently, the government means to brush over constitutional violations by references to "sufficiency of the evidence (Response at 1 see also *Id*. at 6-7, 9 and 13) and "advisory opinions" (*Id*. at 2). Defendant asks that the court not close its eyes to indefensible prosecutorial abuse.

**D.**     **The Court Should Find "Unusual Circumstances" That Authorize Its Deciding the Motion to Dismiss in the Abusive Extra-Territorial Projection of *In Terrorem* power by the United States in Violation of Principles of the Constitution, Prudential Justice and Copyright Law.**

Defendant Vaulin and the government are in agreement that *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009) authorizes this court to decide defendant Vaulin's motion to dismiss. Defendant

submits that a standard of "unusual circumstance" is the basis for such a decision rather than a standard of "discretion." (See Response at 1-3.) The *Hijazi* court ruled: "We conclude that, under the unusual circumstances of this case, the district court had a duty to rule on Hijazi's motions to dismiss." (589 F.3d at 403.)

The "unusual circumstances" of this case have parallels to those of *Hijazi*. See *United States v. Bokhari*, 993 F.Supp.2d 936 (2014) for a narrative of facts in *Hijazi*. ("Hijazi raised 'serious questions about the reach of U.S. law,' and it was unclear whether the United States contacts on which the government relied — dealings with a U.S. contractor doing business in Kuwait and a series of emails to U.S.-based e-mail addresses — were 'sufficient to support [the] prosecution.' [589 F.3d.] at 411.") Although this case does not have *Hijazi*'s "impasse" or "distressed relations" with a foreign county (see Response at 3), "unusual circumstances" are presented by the improper prosecution in this case that exploits judicial procedures to project abuses of power into other countries. By targeting foreign defendants for improper prosecution of its new crimes, the government can punish those it disfavors and maintain threats while time-consuming procedures are followed; and the government thus accomplishes aims of deterring non-criminal conduct of running a torrent site. If defendant Vaulin must be extradited before he can be freed from an abusive prosecution, final vindication will be small solace for the injustices suffered. Infliction of such injustices is the evident purpose of the extra-territorial prosecution.

Application of the fugitive disentitlement doctrine is discretionary in this Circuit. In *Hijazi*, the court declined to apply the fugitive disentitlement doctrine discussed at 1-2 of the Response but, instead, followed the principles set forth in *Degen v. United States*, 517 U.S. 820, 828 (1996). (589 F.3d at 412-414.) "The fugitive-disentitlement doctrine holds that a court may, in its discretion, dismiss or defer an action if the party seeking relief has become a fugitive.

16

*Degen*…" (*Nash v. Hepp*, 740 F.3d 1075, 1078 (2014) (fugitive disentitlement doctrine disregarded pursuant to court's discretion.) See also *SEC v. Homa*, 514 F. 3d 661, 676, n. 24 (7th Circuit 2008) ("no reason to invoke the fugitive disentitlement doctrine to dismiss Mr. Pollock's appeal").

The *Degen* court based its decision authorizing application of fugitive disentitlement on the inherent authority of the courts:

> Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities. *Chambers v. NASCO, Inc.*, 501 U. S. 32, 43-46 (1991)…"
> (517 U.S. at 823.)

Such inherent authority has been exercised in cases that are outside the usual patterns of procedures. *United States v. Laraneta*, 700 F.3d 983 (7th Cir. 2012). Exercise of supervisory powers of the court is appropriate as "a remedy designed to deter illegal conduct." *United States v. Hastings*, 461 U.S. 499, 505 (1983). See also *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) (prosecutorial vindictiveness); *United States v. Jarret*, 447 F.3d 520 (7th Cir. 2006) (same). In addition, grand jury proceedings are subject to judicial supervision. *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972); *Levine v. United States*, 362 U.S. 610, 617 (1960); *United States v. Gold*, 470 F.Supp. 1336 (N. D. Ill. 1979).

Here, there is a compelling reason to disregard the fugitive disentitlement doctrine and to decide the motion to dismiss. The government is engaging in misconduct in pursuing an Indictment that alleges new crimes invented by the prosecution. The improper theories are being used first on overseas defendants, including defendant Vaulin. The prosecutor interposes the fugitive disentitlement doctrine to shield its misconduct from judicial scrutiny. If the government had first tried out its novel crime of "encouraging copyright infringement" by way

of mere torrent file on a domestic defendant, dismissal would have been prompt. Here, the prosecutor has already been able to brandish a threat of prosecution globally for many months. Further delay would implicitly sanction such abusive tactics.

## III.    Conclusion

For the foregoing reasons, the court should hear and determine defendant Vaulin's Motion to Dismiss. The Motion to Dismiss should be granted.

Respectfully submitted,                                    /s/ Ira P. Rothken

                                                           ROTHKEN LAW FIRM
                                                           3 Hamilton Landing Suite 280
                                                           Novato, CA 94949
                                                           (415) 924-4250
                                                           (415) 924-2905
                                                           ira@techfirm.net


                                                           Theodore T. Poulos
                                                           COTSIRILOS, TIGHE,
                                                           STREICKER,
                                                              POULOS & CAMPBELL LTD.
                                                           33 North Dearborn Street, Suite 600
                                                           Chicago, Illinois 60602
                                                           (312) 263-0345