```
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )  Docket No. 16 CR 438-1
                                      )
 4                    Plaintiff,      )
                                      )
 5           v.                       )  Chicago, Illinois
                                      )  January 31, 2017
 6   ARTEM VAULIN, also known as      )  2:00 o'clock p.m.
     Tirm,                            )
 7                                    )
                      Defendant.      )
 8
                     TRANSCRIPT OF PROCEEDINGS - MOTION
 9                 BEFORE THE HONORABLE JOHN Z. LEE

10   APPEARANCES:

11   For the Government:          HON. ZACHARY T. FARDON
                                  United States Attorney, by
12                                MR. DEVLIN N. SU
                                  MR. SEAN DRISCOLL
13                                MR. RYAN DICKEY
                                  Assistant United States Attorneys
14                                219 South Dearborn Street
                                  Chicago, Illinois 60604
15
     For the Defendant:          COTSIRILOS, TIGHE, STREICKER,
16                                POULOS & CAMPBELL, LTD., by
                                  MR. THEODORE THOMAS POULOS
17                                MR. MARTY BASU
                                  33 North Dearborn Street
18                                Suite 600
                                  Chicago, Illinois 60602
19
                                  ROTHKEN LAW FIRM, by
20                                MR. IRA P. ROTHKEN
                                  MR. JARED ROBINSON SMITH
21                                3 Hamilton Landing
                                  Suite 280
22                                Novato, California 94949

23                    ALEXANDRA ROTH, CSR, RPR
                         Official Court Reporter
24             219 South Dearborn Street, Room 1224
                      Chicago, Illinois 60604
25                       (312) 408-5038
```

1          (Proceedings had in open court:)

2               THE CLERK:  16 CR 438, USA versus Artem Vaulin.

3               MR. SU:  Good afternoon, Judge.  Devlin Su for the

4    United States.

5               MR. DISCOLL:  Sean Driscoll and Ryan Dickey for the

6    United States as well, your Honor.

7               MR. ROTHKEN:  Good afternoon, your Honor.  Ira Rothken

8    for the defendant Artem Vaulin.

9               MR. SMITH:  Good afternoon.  Jared Smith with Ira

10   Rothken for Artem Vaulin.

11              MR. POULOS:  And good afternoon, your Honor.  Ted

12   Poulos and Marty Basu, here as local counsel for Mr. Vaulin.

13              MR. BASU:  Good afternoon, your Honor.

14              THE COURT:  Good afternoon.

15         So I see that the lights have been dimmed, and the

16   setting is ripe for some presentation of some kind.

17         So I have -- what do we have?  What do we have

18   scheduled today?  I have set aside approximately an hour or so

19   for this oral argument.  I read all the briefs, and we have had

20   a discussion last time.

21         And so have the parties discussed how they would like

22   to proceed?  If not, I will just tell you how to proceed.

23              MR. ROTHKEN:  Your Honor, we haven't discussed how to

24   proceed, and certainly we'd be deferential to the Court.  We do

25   have some slides I would like to share with you as you see fit.

1    THE COURT:  Okay.  Given the fact that it's

2    defendant's motion, I will allow defendant to go first.  As I

3    said, I'll allot approximately 30 minutes for each side.  And

4    defendants can reserve whatever time that you need for

5    rebuttal.  And even if you don't, I will probably give you a

6    little bit of time for rebuttal.

7    All right?  So the rest of you can take a seat.  And

8    you may proceed.

9    MR. ROTHKEN:  Thank you, your Honor.  And in the

10   spirit of the Seventh Circuit practice, I'd like to reserve 10

11   minutes.  So if you can let us know, and I'll conclude with ten

12   minutes left.  Thank you very much.

13   Mr. Smith will be here next to me.  We don't have a

14   lot of slides.  We have about five or six slides that we

15   thought that might help.

16   THE COURT:  Okay.

17   MR. ROTHKEN:  Your Honor, we are going to begin with

18   the question that you posed to counsel at the status

19   conference; and that is, the core question is, were there any

20   infringements that were alleged in the indictment to be in the

21   United States?  In pouring through the indictment, and also

22   pouring through the criminal complaint that started this case,

23   as well as the attached affidavit, we're unable to locate first

24   in the indictment any alleged infringements in the United

25   States.

1      There were approximately ten or 11 torrent files,
2  depending upon some ambiguity, that were alleged.  Those were
3  alleged in paragraph 26 J and 26 V.  And they were also alleged
4  in Count 2, which has one torrent file; and Count 3 through 12,
5  which are ten more torrent files.  They are the exact same ones
6  that were alleged in 26 J and 26 V that were alleged in Counts
7  2 through 12.
8      So we are dealing with 11 torrent files.  And I
9  thought that I would bring to your attention what -- there is
10 an elephant in the room, and we need to bring this out right at
11 the beginning of this hearing, that we think frankly is an
12 important issue, and it's an issue that may also go to why the
13 grand jury may not have fully understood what they were doing.
14     And that is, if you take a look, your Honor, at
15 paragraph 4 of the indictment -- and if I can ask Mr. Smith to
16 bring that up on the slide as well.
17     Paragraph 4 is the only paragraph we found that is
18 tethered to the 11 files on KAT that are alleged to be
19 infringing.  And it describes the prosecution's theory of
20 infringement.  And it says, and I'm paraphrasing, but I think
21 I'm paraphrasing fairly, that the defendants made available and
22 caused others to make available without authorization vast
23 amounts of copyrighted content on KAT to millions of
24 individuals in the United States by collecting and uploading
25 torrent files to KAT.

1          So it's not by collecting and uploading content files

2     to KAT.  It's by collecting and uploading torrent files to KAT.

3          Now, when we marry those allegations to the alleged

4     infringements, there is many more allegations in this

5     indictment which discussed the workings of BitTorrent, how KAT

6     is a torrent indexing site.

7          The whole gravamen of the alleged crime has to do with

8     a BitTorrent indexing site.  But along the way, we believe a

9     mistake was made that makes this indictment flawed.  And that

10    mistake was, they tried at some point to conflate the theory,

11    which they honestly articulated in paragraph 4.  They then made

12    the mistake of conflating a torrent file to the work itself.

13          So if you go to 26 V and J and see what they did, they

14    say, for example, 26 J, they made available, distributed copy

15    -- copyrighted movies on KAT's website.  And they call it The

16    Butler.  But they went through great pains before that to

17    discuss how KAT is only an indexing torrent site.  And they

18    separated KAT out from other species called downloading sites.

19    And they didn't allege a single thing happened on a downloading

20    site.  But they alleged the torrent file transfers as though

21    they were the work itself.

22          Same thing with 26 J -- I'm sorry -- 26 V was the only

23    other place in the indictment where the works in-suit, where

24    the works in this indictment, are alleged.  And again, on

25    June 24, 2016, on June 30, 2016, KAT made available and

1    distributed, and they have a list.  And that's just a list of

2    torrent files because that's all that could ever be alleged to

3    be on KAT, according to the government itself.

4            So we said to ourselves in trying to answer your

5    question, well, what's the answer?  The answer is, there is

6    zero copyrights alleged anywhere in the world, copyright

7    infringement alleged anywhere in the world.  And there is

8    certainly zero in the U.S.

9            But then we said, well, how do we double check

10   ourselves?  We're all lawyers.  We're all scientists.  How do

11   we double check ourselves to make sure that this really is the

12   most reasonable interpretation?  So we went back.  And

13   fortunately in this case not only do you have to look at an

14   indictment to determine what the reasonable notice is that's

15   given.  But it has to be a good-faith interpretation.

16           So we went back and we looked at the criminal

17   complaint.  We ask the Court to take judicial notice of that.

18   And attached to that is an affidavit under penalty of perjury,

19   from the U.S. government investigator that started this case,

20   who discussed the investigation.  And what -- we have some

21   slides we can show you if the Court is interested.

22           But to its essence, that entire affidavit only

23   discussed torrent index, torrent files.  Never discussed any

24   possibility of a direct download site.  That was only

25   introduced in the indictment.

1      And then when you take a look at the alleged

2  infringements that were found on that KAT site that was in the

3  affidavit, there are the exact same names, the exact same dates

4  as the alleged infringements that are articulated in this case

5  most clearly in Counts 3 through 12, literally, June 24.  And

6  they were laid out in paragraph 19 of the affidavit under

7  penalty of perjury.

8      So not only does the plain interpretation of the

9  indictment tell us the prosecution's theory is flawed as a

10  matter of law because the reproduction, distribution of torrent

11  files, which is meta data, is not a work or a content that can

12  be infringed.

13      But we went back to double check ourselves for what a

14  good-faith interpretation could be.  It can't be anything but

15  what we said.  So then, your Honor, what we did was we said,

16  okay, let's take a look at what the alleged infringement is in

17  Count 3, which is the direct willful infringement count,

18  Counts 3 through 12.  And if your Honor wants to take a look at

19  that, you'll see there is a nice chart right there that mimics

20  what was in the affidavit in the criminal complaint, with the

21  exact same dates.

22      And we said, okay, could this be aiding and abetting?

23  Aiding and abetting, to be fair to the government, could be

24  assumed to be pled in an indictment.  The Counts 3 through 12

25  say that this -- these counts apply to Artem Vaulin, another

1    person named Oleksandr, defendants herein, and no one else.

2         So the only theory of aiding and abetting that we

3    would think could be reasonably construed from this would be

4    that they aided and abetted each other.  There is no one else.

5    There is no primary or principal infringer that they'd be

6    aiding and abetting.  They are aiding and abetting each other

7    to make available these torrent files on KAT.

8         We don't see any other interpretation of this.  And

9    that's defective as a matter of law, this entire count.

10   Counts 3 through 12 are defective.  Whether you want to couch

11   it in terms of direct criminal infringement or whether you want

12   to couch it in terms of aiding and abetting, there is no

13   principal that they aided and abetted other than themselves.

14   And KAT never touched the content files.

15        If we go take a look at Count 13, Count 13 is

16   defective for more reasons.  Count 13 doesn't even allege the

17   names of copyrighted works, the most basic requirement to lay

18   out a criminal copyright claim.  It just says, copyright

19   infringement.  And it only incorporates by reference

20   paragraph 1 of Count 1.  And paragraph 1 does not mention a

21   single copyrighted work.  It only mentions some definitions

22   regarding BitTorrent and things that are unrelated.

23        So Count -- and it's axiomatic, your Honor, that if

24   you want to incorporate by reference you can.  But the cases

25   have found, it has to be overt.  And they didn't do it.  So

1   Count 13 is defective as a matter of law for that reason alone,

2   but also for the reasons that we articulated, that even if you

3   were to be liberal, it would only being applied to torrent

4   files.

5          But they have an additional defect in this count.  And

6   that additional defect is that there is no allegation that

7   torrent files can be valued over $2,500.  But, of course, for

8   all the copyright counts, there is simply no subject matter

9   jurisdiction unless you can show an infringement in the United

10  States.  And whether that's couched as an element of the crime

11  or couched as subject matter jurisdiction, we think Subafilms

12  and its progeny make it clear that that element has not been

13  met.

14         Now, going back to Counts 3 through 12, and let me go

15  to Count 2.  Count 2 is defective for all the same reasons as

16  Counts 3 through 12.  Counts 3 through 12 also articulate a

17  theory that these torrent files were made available in a

18  computer network accessible to members of the public.  But in

19  order to be able to pass muster for this count and for this

20  law, which is a felony, it's the work itself that has to

21  actually go onto the computer network.  It can't be a torrent

22  file.

23         And since by all logic and reason, the way this

24  Counts 3 through 12 has been alleged, the work itself is not on

25  KAT.  And torrent files don't pass muster when Congress

1  intended that somebody literally take the movie file or

2  whatever and put it on the server itself.

3          THE COURT:  So let me ask you this.  Okay?  So as I

4  see it, the government's theory appears to be on the aiding and

5  abetting theory that Mr. Vaulin and the other defendants were

6  aiding and abetting members, individual members, of the public

7  who were seeking to download the works illegally.

8          And so basically to put it in terms of a hypothetical,

9  if a member of the public sends an e-mail to Mr. Vaulin and

10 says, hey, look, I want to download Superman versus -- Batman

11 versus Superman because I want to show it to my friends at this

12 party.  Can you tell me how I can have access to it?  And

13 Vaulin says, okay, I'll do that.  But in exchange you have to

14 give me a hundred dollars.

15         So the individual says, okay, that sounds fine.  And

16 so then Vaulin e-mails him a link.  Okay?  Not a BitTorrent

17 file but just a link to a third-party website, and says, here,

18 go to this website.  Click on this.  You can download it there.

19 Okay?

20         Why isn't what they are alleging exactly that?

21         MR. ROTHKEN:  Because in paragraph 4, they are

22 alleging that it's Artem Vaulin and other defendants that made

23 available copyrighted content on KAT by collecting and

24 uploading torrent files to KAT, not the works themselves.

25 That's the gravamen of their offense.

1    If they would have added in to this -- using your
2  hypothetical, and changed it which would mean, if they want to
3  try another indictment -- which we still don't think would pass
4  muster.  But this is not this indictment.  If they wanted to go
5  with your theory, your Honor, respectfully, they'd have to say
6  who the primary infringer is.  And in your hypothetical, it
7  would be the person who went and utilized the link and then
8  downloaded.

9    Now you have a principal for aiding and abetting.  And
10  then they'd have to show all the other things needed for aiding
11  and abetting to say that you had a mens rea that was
12  sufficient.  But most importantly, and why that's important, is
13  because the way the criminal copyright law works is, you have
14  to examine the principal's wrongdoing.  And if the principal is
15  someone who's not an infringer, because we find out the
16  principal has a license to do that, then there would be no
17  crime.

18    You can't analyze aiding and abetting in a vacuum.
19  You have to have a proper process where the government lays out
20  their allegations correctly, so that your Honor and us defense
21  lawyers can litigate this case and raise the issues in a
22  disciplined manner, so that one day if it goes to an appellate
23  court they can review it properly.

24    Right now we have a situation where your hypothetical
25  points out the deficiencies in what's being alleged.  Let's

1    take a look at your hypothetical.  If somebody were to send a

2    link, which is a de facto BitTorrent file.  I get it.  Okay?

3    That would not be a reproduction, distribution.  Okay?  That

4    would not be putting it on a computer network.  So those

5    felonies would be gone.  Their conduct then would be tethered

6    to whatever someone does with it and -- and certain other

7    things.

8            Now, if this person then gets it and does nothing in

9    the United States to download it, it doesn't count under

10   Subafilms.  If this person gets it and downloads it, and they

11   were ineffective in downloading it, it doesn't pass muster for

12   a copyright infringement.  If they get it and they download it

13   and immediately erase it, it may be a civil infringement.  If

14   they get it and download it and only use it for their personal

15   use, for their family or, you know, a kid, it's not even --

16   it's not even a misdemeanor.  It may be a civil infringement.

17           And so we don't have that.  We don't have allegations

18   here which make out the primary principal willful infringement

19   that all the other theories can be tethered to.  And why is

20   that also important?  Because we're not in a homicide case.

21   We're not in a case where one of the Ten Commandments was

22   violated.

23           We're in a case that under Dowling from the Supreme

24   Court and its progeny talked about Congress making up these

25   artificial rules that is a careful balance between the progress

1    of the arts and sciences and fair use, the First Amendment.
2    And it has special rules.  And the special rules are contained
3    in the four corners of the Copyright Act.

4            And so just like Dowling and LaMacchia, which came
5    after that, we're careful to say, unlike civil law, where it's
6    judge-made law, we're here to follow what Congress has said.
7    And even if we think that maybe a good rule should be
8    something, we're still bound to follow what Congress has said.
9    Congress has not created Grokster, or Napster or MP3Board,
10   which is one of my cases.  Okay?  Congress has only created
11   criminal law frankly to be very, very, very hard to prove, and
12   to be very hard to allege.

13           And so it's important that in deciding this case, that
14   we also look beyond our case, so that one has to follow these
15   rules, so that as I indicated at the status conference, if
16   someone types in a search on Google, and Google returns links,
17   and those links go to infringing files, infringing videos -- or
18   like the YouTube case, which frankly had harsher allegations
19   than this case, where they're talking about all sorts of
20   infringing works on their sites.  And the works were on their
21   site.  They weren't like torrent files.  They were literally on
22   the site.  And YouTube won.

23           Those should not be easy to indict.  We're not in an
24   area of criminal law like others.  We're in an area where
25   Congress has spoken and has made it hard.  And it's hard so

1   there is no chilling effect.  It's hard so that the in terrorem

2   effect of a criminal prosecution can't just be laid on any

3   user-generated content site.

4           THE COURT:  So the torrent files that are uploaded on

5   KAT, okay -- and we will put aside the direct download

6   allegations.  But the torrent files, are users able to upload

7   the torrent files?  Or are the torrent files uploaded by the

8   administrator of the site?

9           MR. ROTHKEN:  The -- from what I understand, just like

10  any other search engine, torrent files are like links.  Torrent

11  files are, generally speaking, spidered by the search engine's

12  crawler.  And it sort of crawls through all throughout the

13  internet.  It even crawls probably Google, and it looks for as

14  many torrent files as possible.

15          And these sites -- this is not in the indictment.  But

16  for background, if you look at Isohunt, which is another case

17  that I handled, that was a BitTorrent case from the Ninth

18  Circuit.  And the goal of Isohunt was to have as many torrent

19  files as possible, through a spider.  And then you have search

20  engines like Google spidering the torrent sites.  And they're

21  all spidering each other.

22          Now, interestingly enough, every day search engines

23  spider torrent sites.

24          THE COURT:  So let me ask you this.  So take a

25  hypothetical indictment.  Okay?  If the indictment says, okay,

1    defendants were engaged in, you know, conspiracy or scheme to

2    aid and abet individual users in the United States from

3    illegally downloading, knowingly downloading, without

4    authorization the following movies.  And they list the 12

5    movies.

6            And then say, for example, individual A on this date

7    did that, right?  And they got it from -- they got the

8    BitTorrent from the KAT site.  Individual B did that.  Let's

9    say they list a dozen individuals for each movie.  Okay?  And

10   they say, these individuals reside in the United States.  And

11   you can obviously get discovery of who these individuals are as

12   part of the discovery process.

13           You know, and the indictment also alleges that the

14   providers of the BitTorrent movies knew exactly what these

15   individuals are going to be doing with these BitTorrent files.

16   And, in fact, that's what they did.  In that hypothetical

17   scenario, would that indictment be sufficient or meet the

18   concerns that you raised in your motion?

19           MR. ROTHKEN:  Well, the core concern we raise in our

20   motion is that BitTorrent files are not infringements because

21   they are not content.  So it would go a long way if the

22   government were to go ahead and identify the works in-suit,

23   were to go ahead and say that the primary infringers, which are

24   not KAT -- which is not KAT, acted willfully -- because if it's

25   not willful, then we're not even in the felony zone.  You can't

1   aid and abet a misdemeanor or civil infringement.

2          The statute, in my humble view -- although I have to

3   say I haven't seen this embedded in any cases, but it's in the

4   statute.  I think Senator Hatch was an advocate of this --

5   requires that the government were to allege that this is beyond

6   mere reproduction and distribution.  That's embedded in the

7   criminal statute.

8          So you have to say a little bit as to why it's willful

9   beyond a mere reproduction and distribution itself.  You have

10  to allege which of the rights under the copyright law is being

11  infringed.  If it's merely a streaming right, well, that's at

12  most a misdemeanor.  So it's reproduction, distribution you got

13  to say that.

14         You have to identify the infringer in some regard so

15  that you can tell, for example, in the criminal complaint and

16  the affidavit, well, one of the users of KAT was archive.org.

17  They mirrored the entire site every day.  And every time they

18  do that, the counter goes off for the number of torrent files

19  downloaded.  You can probably go to archive.org today and

20  download torrent files.

21         And so they're not a criminal.  So they're not a user.

22  You have to know who the user is.  If it's not archive.org, who

23  is it?

24         You have to know when it happened, statute of

25  limitations and whatever.  And that's just axiomatic.  I've

1   seen that in the cases. You have to allege it's in the United

2   States, as your Honor pointed out under Subafilms and its

3   progeny.

4          Let me talk -- can I talk a little bit more about the

5   alleged in the United States part?

6          THE COURT: Sure.

7          MR. ROTHKEN: Thanks. Subafilms is actually very

8   instructive because Subafilms discusses a scenario which is

9   like a de facto conspiracy. It's about authorizing someone

10   else to infringe.

11          And if we understand where your Honor is going to the

12   hypothetical, authorization perhaps is even more overt than a

13   conspiracy. You go ahead and do this. We authorize you. And

14   the deals that were done in Subafilms to get to the point where

15   they authorized the Beatles movie to go ahead and be copied in

16   the United Kingdom would essentially be de facto conspiracy.

17   And the Court still found that you got to have to allege an

18   infringement in the United States. And they went through the

19   entire history as to why.

20          And if your Honor thinks that's important, I will go

21   and discuss why that should apply here to conspiracy, that

22   conspiracy, even though one may want to argue is completely

23   inchoate. Not only does the object of the conspiracy have to

24   be an offense against the United States. But you still have to

25   allege an actual infringement in the United States because the

1    Copyright Act would supersede the criminal law of conspiracy,

2    given Subafilms, giving the lack of extraterritorial

3    jurisdiction that has been involved in the Copyright Act since

4    Oliver Wendell Holmes wrote his opinion in 1908, and given

5    Dowling and the Rule of Lenity.

6           Going back to your --

7           THE COURT:  What about -- what about the direct

8    download sites?

9           MR. ROTHKEN:  The what?

10          THE COURT:  The direct download sites.  The direct

11   download sites, the allegation is that they actually have

12   copies of the works, and that they are just allowing people to

13   download them without authorization of the author.

14          MR. ROTHKEN:  Respectfully, your Honor, we didn't see

15   any works tethered to a direct download site, either in the

16   criminal complaint where they don't even -- we did a search for

17   the word, direct download, in the affidavit.  It doesn't exist.

18   In the indictment they added in direct download.  It somewhat

19   may obfuscate the indictment a bit.

20          But then when you analyze it carefully, you see that

21   there is no infringement that they're alleging arising out of

22   the direct download site.  It's only out of the KAT torrent

23   indexing site.  And that's consistent with the declaration of

24   the penalty of perjury by the investigator on file in the

25   criminal complaint.

1        So if somebody wants to allege that person A went to a

2   site and directly downloaded something and here is why

3   defendants are responsible, let them allege it.  They just

4   can't say, generally speaking, a direct download site is bad

5   because -- I mean, you know, in the old days, I used to go to

6   shareware.com owned by Cnet.  That's a direct download site.

7        You got to describe more than just basically saying, a

8   direct download site dual use technology where good and bad

9   people can put good and bad things on it.  Then you'd be under

10   the Sony doctrine, which immunizes substantial non-infringing

11   use sites.

12        So they don't say enough.  And we're not trying to be

13   cute.  They could very well be the government believes that

14   they have a criminal case.  It's just that there can't be a

15   shortcut to it.  We need to know the grand jury didn't operate

16   on -- in a mistake, in a misleading way.  Our client needs to

17   be put on proper notice.  We need to have a proper record.

18        Going on back, if I can, for a second, your Honor, to

19   the additional things that need to be alleged.  I left off in

20   the U.S.  You also have to allege, and which makes this more

21   complicated, that the primary infringer that you aided and

22   abetted actually exceeded the $2,500 limit, because if you just

23   go ahead and aid and abet someone who has a hundred dollars

24   worth of damage to the copyright owners, you didn't meet

25   felony.  So you'd have tons of alleged misdemeanors or civil

1    infringements that you aided and abetted.  Okay?  Each one

2    would be different because every person is different.  And

3    every mens rea is different.

4            Or you'd have to show that whether it's a reproduction

5    or distribution, that's an issue right here.  It is a much

6    different scenario for aiding and abetting a reproduction.

7    Then you can never get to the pre-release works part, because

8    the pre-release works requires a distribution.

9            They didn't do that.  So -- and to be fair, there is

10   not a lot of cases on this.  We had to spend a lot of time

11   going through all this.  We believe that our arguments here are

12   in good faith.  We think the government made a mistake.  We

13   would like the Court to rule that the indictment is dismissed.

14           The additional claims, just for completeness sake, is

15   that there is money laundering counts.  And if your Honor will

16   take a second to go, because I think this is actually quite

17   important.  The money laundering counts can be found -- and I

18   use that word loosely because each statute is articulated.

19   Money laundering itself is ambiguous.

20           Starting on page 17 of the indictment, in order to

21   have each of these money laundering type charges, you have to

22   allege the predicate crime.  Since they only incorporate by

23   reference paragraph 1 of Count 1, and that does not include any

24   kind of allegations of infringing works, all of the counts from

25   14 on are defective.  They didn't incorporate by reference

1   anything.  They just generally allude to criminal copyright

2   infringement of some -- somewhere out there in the world

3   criminal copyright infringement happened.  And, therefore,

4   you're responsible for money laundering.

5           And we would submit that on -- based upon this

6   indictment, you can't money launder lawful activity.  And you

7   certainly aren't on notice of what it is they are talking

8   about.

9           THE COURT:  Can you spend a couple minutes talking

10  about Hijazi and whether or not I should rule on the motion or

11  defer?

12          MR. ROTHKEN:  Well, Hijazi obviously is right here,

13  Seventh Circuit case.  Hijazi does give you the discretion to

14  rule.  I would submit to your Honor that based upon the notion

15  that this entire indictment is defective, that there is no

16  allegation of any kind of criminal infringement in the United

17  States, that our client is in prison currently in Poland, and

18  he has been since the start of this.  And I'll speak with

19  Mr. Poulos, my co-counsel.  We have learned of certain

20  information.  But I want to make sure I talk to him before we

21  present it to you.

22          And that this raises serious issues with the

23  jurisdiction of this Court in a case of first impression, that

24  this meets the Hijazi criteria.

25          THE COURT:  In Hijazi, though, there was basically

1    what then Judge now Chief Judge Wood described as basically a

2    stalemate, right?  So nothing was happening.  Nothing could

3    happen because the foreign country said that they -- the

4    Kuwaiti country, Kuwait government said they are not going to

5    extradite Hijazi.  The district court says, oh, well, I'm not

6    going to rule on it.  So basically nothing was happening in

7    that case.

8            Here we have extradition proceedings that are taking

9    place.  Why shouldn't I just wait until if and when Mr. Vaulin

10   is extradited and appears before this Court to rule?

11           MR. ROTHKEN:  If -- what factors should go into how

12   you utilize your discretion, may I couch it as that?  I would

13   have to say that you would look to the gravamen of this

14   complaint and whether or not the statute underlying this

15   complaint is designed to be extraterritorial or not.  And I

16   think that Copyright Act almost uniquely stands alone as not

17   applying extraterritorially.

18           He is in the European Union right now.  He is in

19   prison.  The European Union has their own robust set of

20   copyright laws.  United States' theory is right now 11 torrent

21   files on a server in Costa Rica, dot cr, maybe one in the dot

22   ph, which is the Philippines, and folks who worked out of

23   Ukraine.

24           And if this case cannot be properly indicted so that

25   there could be a proper nexus with the United States, it would

1   seem to be cruel and an improper export of United States power

2   to someone who hasn't committed any crime at all, who shouldn't

3   even have to go through the extradition process, who shouldn't

4   be in jail right now, who shouldn't have his assets frozen so

5   he can't pay lawyers over there, especially lawyers in a

6   complex case like this.

7          THE COURT:  In some respects, Mr. Vaulin -- your

8   argument is that Mr. Vaulin's condition is even more dire than

9   Mr. Hijazi's condition because at that time in Hijazi what he

10  was facing, for lack of a better word, the detriment that he

11  was facing was that he couldn't travel to other parts to visit

12  his families and what not, as Chief Judge Wood noted in the

13  opinion.  Here what you are saying is that Mr. Vaulin is, given

14  the presence of this indictment that you are challenging, the

15  mere presence of the indictment is forcing Mr. Vaulin to

16  undergo hardship in Poland by, No. 1, being in prison; No. 2,

17  facing an extradition process with an indictment whose extra-

18  territorial scope and whose just sufficiency itself you're

19  charging before me in this court.

20         MR. ROTHKEN:  Yes, your Honor.  That is very properly

21  articulated.  And if we're ever going -- if a Court is ever

22  going to use their discretion, they would use it here.  It is

23  offensive to the Berne Convention and to the factors that

24  Subafilms looked at for the U.S. to have a defective indictment

25  stand, particularly when it intrudes on the territoriality

1    issues that were articulated in Subafilms.  You know, the

2    European Union has their own set of safe harbors.  YouTube had

3    much more serious allegations against it.

4         It could very well be at the end of the day that the

5    United States will not be able to find folks who have been

6    aided and abetted.  And it could very well be that this case

7    will ultimately -- you know, it should right now get dismissed.

8    But if -- you know, depending on how the Court frames its

9    order, it could very well be that this person spent time in

10   jail for no reason at all.

11        THE COURT:  And is he challenging the extradition --

12   at least one of the grounds on which he is challenging it is

13   what he believes to be the insufficiency of the indictment?

14        MR. ROTHKEN:  Your Honor, we're having a hard time

15   speaking with Mr. Vaulin.  I've never spoken to him personally.

16   We've been going through Polish counsel.  And the Polish

17   authorities have not let U.S. counsel speak with our client.

18   We've asked three times and have officially been turned down

19   three times.

20        The -- from what we understand what's going on is that

21   they did provide a letter and a copy of our motion to dismiss

22   to the Polish court.  And he is opposing extradition.  But he

23   is doing so in such dire circumstances where he can't even

24   speak and get consultation from U.S. counsel, who knows, you

25   know, about the allegations in this complaint and what they

1    mean.

2            So he has a much more serious situation than Mr.

3    Hijazi had in his case.  And we could discuss other issues with

4    your Honor.  I have a whole list.  But I wanted to distill it

5    down to its essence.

6            So if your Honor has any more questions, I am happy to

7    address them.  But I will just show you just for a second -- if

8    you can turn on this overhead.

9            We have a laundry list of the extent the United States

10   went through to discuss how it really is a torrent indexing

11   site in the indictment.  And so, you know, we are talking about

12   many, many, many, many allegations.

13           The term torrent in the indictment was mentioned

14   approximately 30 times.  And again, no -- no infringements were

15   tethered to direct download sites.

16           So, your Honor, unless you have any other questions,

17   I'd be happy -- I hope I still have time left.

18           THE COURT:  I'll give you some time.  Thank you.

19           MR. ROTHKEN:  I appreciate it, your Honor.  Thank you.

20           MR. SU:  Judge, could we have the Elmo turned off?

21           THE COURT:  Do you need the --

22           MR. SU:  I don't.

23       (Brief pause.)

24           THE COURT:  All right.  The first question is, why

25   shouldn't I decide the motion?  I mean, after all, Mr. Vaulin

1    is in custody in Poland based upon this indictment.  He is

2    undergoing extradition based upon this indictment.

3          If, in fact, the indictment is insufficient, as

4    counsel alleges, why should I wait for him to appear before me

5    before making that determination?

6          MR. SU:  Sure, Judge.  Under Kashamu, defendant is

7    functionally being a fugitive because he is -- understanding

8    that there is an indictment pending in this court, but he's

9    nevertheless resisting in Poland.  That's exactly what Kashamu

10   himself did.  Now --

11         THE COURT:  Now, I understand what Kashamu did.  And

12   we talked about Kashamu and the import and significance of

13   Judge Posner's statement in Kashamu versus the finding or the

14   conclusions in Hijazi as to whether or not the fugitive

15   disentitlement doctrine applied.

16         But the government agrees, I take it, that even if it

17   were to apply, that the Court still has discretion to make a

18   decision if it believes, after weighing the various factors,

19   it's appropriate to do so under Hijazi?

20         MR. SU:  Well, Judge, I think for the reasons that you

21   articulated Kashamu controls rather than Hijazi.  I think

22   Hijazi was limited to the facts that you mentioned.

23         THE COURT:  But didn't Judge Posner -- but Kashamu is

24   a rather interesting case, right, because in it Judge Posner

25   says basically, it doesn't matter whether the defendant was

1  ever in the United States, as long as he knows that there is an

2  indictment pending here.  And so the fugitive disentitlement

3  theory applies.  But nevertheless, I'm going to decide the

4  issue.

5  And so given the fact that he addressed the merits of

6  the issue, why isn't -- is the statement with regard to the

7  fugitive disentitlement doctrine -- is it binding or is it

8  dicta?  Because after all, Judge Posner, even finding that he

9  was a fugitive, nevertheless decided the underlying -- the

10  merits of the case.

11  MR. SU:  That's true, Judge.  I do agree that under

12  those two cases, the way it's scriven, is that you do have the

13  discretion to decide this.  I think it makes perfect sense in

14  this particular circumstance to wait, let the extradition

15  proceedings play out.  Because as you noted, one way or another

16  they are going to be -- there is going to be resolution on the

17  status.  Either he will be extradited or he won't.

18  If he is going to be extradited, we can let him come

19  here.  He can reraise his motion then.  We can treat him like

20  any other defendant.  If he is not going to be extradited, then

21  any opinion your Honor may render in the meantime would be

22  totally moot, would be an advisory opinion of the type that

23  fugitive disentitlement doctrine is designed to prevent.

24  In addition, counsel makes a big deal about --

25  THE COURT:  But presumably, if I find that the

1    indictment is insufficient, then I guess I was under the

2    assumption, and perhaps I am wrong, that he would be released

3    from custody in Poland, and that he would basically be set

4    free.

5              MR. SU:  I think here is where Kashamu comes into

6    play, because I think what Judge Posner was getting at is that

7    by resisting extradition, he is signaling that he doesn't want

8    to have a speedy resolution of legal process in this case.

9    Because he could easily -- if he wanted his day in court here,

10   he could easily have agreed to extradition back when he was

11   arrested in July.  He could agree to it now.  He doesn't have

12   to sit in jail in Poland.

13             The only reason he's doing that is because he wants to

14   put up as many roadblocks as possible.  He does not want speedy

15   resolution in this case.

16             THE COURT:  But isn't that putting him in a bit of a

17   Catch 22?  I mean, after all, he is in custody now.  He

18   believes he shouldn't be in custody.  And yet in order to prove

19   that he shouldn't be in custody, you want him to consent to

20   being in custody and having him transferred here to face the

21   charges before I can decide or before I should decide whether

22   or not he should have been in custody in the first place.  That

23   seems like not much of a choice to present to a criminal

24   defendant who is currently in custody based upon and only based

25   upon this indictment.

1      MR. SU:  Well, Judge, he is in custody based upon his

2  own decision to resist extradition.  He's confronted with the

3  same choice that any other criminal defendant gets, whether

4  they are here or abroad.  They can appear in this court to face

5  the charge.  They can litigate if he truly believes the

6  indictment is deficient.  He can raise at this point, just like

7  any other defendant.  Or he can -- I guess some choose -- some

8  choose to flee.  Others --

9      THE COURT:  So you mean he could have made the choice,

10  rather than being apprehended in Poland, he could have made the

11  choice to, as some people do, get on a plane and come here and

12  turn himself in.

13      MR. SU:  That's right, Judge.  He can still make that

14  choice.  But the fact that he hasn't demonstrates to this Court

15  that he just is not interested in a speedy resolution of the

16  charges at this point.

17      In addition, as I mentioned in my papers, as I'll

18  touch on later today, and I think what you just heard, a lot of

19  what defendant's arguing is really request for factual

20  information, factual arguments that are just not appropriate,

21  that are not grounds to dismiss at this stage, but would be

22  available once he gets access to discovery.  Once he's actually

23  here, he can have access to discovery he wants, can satisfy his

24  curiosity at that point.

25      THE COURT:  So let me ask you about the underlying

1   theory then.  The allegations that defendant was making

2   available BitTorrent files on the various websites, is it the

3   government's position that the mere fact that he made those

4   available sufficiently states an offense under the criminal

5   copyright statute?  Or is the government's theory that, well,

6   he not only made them available, but that individual users here

7   in the United States knowingly, both on their end but also

8   defendants -- with defendant's knowledge, used the BitTorrent

9   files to illegally download the works without permission?

10          MR. SU:  I think, Judge, the indictment has two

11  theories of liability.  First that he conspired with others,

12  which is basically that he entered into an agreement with other

13  people.

14          THE COURT:  And others meaning the individual users

15  who are downloading?

16          MR. SU:  Others meaning the other named defendants.

17  Others includes others known and unknown to the grand jury as

18  well.

19          And additionally, the substantive copyright

20  infringement counts --

21          THE COURT:  Well, no.  Hold on.

22          But the others, would they necessarily include

23  individuals that actually downloaded the works using the

24  BitTorrent files?

25          MR. SU:  Judge, I think at this point it's premature

1    to say, given that that's a matter of trial strategy.  I think

2    at this point --

3        THE COURT:  Is it the government's -- is it the

4    government's position that -- I am just trying to understand

5    what exactly the government's theory is, of criminal liability

6    is.  Is the government's theory that you don't need

7    individuals -- you don't need to have any proof at trial of

8    individuals actually downloading these movies using the

9    BitTorrent files that are at issue in this case in order to

10   prove criminal liability against defendant?

11       MR. SU:  No, Judge.  That's not my position.

12   Currently the way that we anticipate the evidence coming in is

13   that there will be evidence of downloads of -- via BitTorrent

14   files placed -- made available via KAT.  I'm just saying that

15   in the indictment itself it's sufficient to allege that it

16   conspired with other people.  And we have named other people

17   which he conspired with.

18       But it's not necessary to name every single person

19   that he conspired with.  Nor is it necessary to name any

20   specific principal that he aided and abetted given Seventh

21   Circuit's very clear teachings that Section 2 liability

22   automatically attaches to every single federal offense.  And

23   that in fact the government does not even need to allege

24   Section 2 in the indictment for it to be an available theory at

25   trial.

1          In other words, if the words, Section 2, don't even

2     need to apply in the indictment --

3          THE COURT:  I guess, I am just trying to wrap my head

4     around this, right?  So let's say that you have -- let's say

5     you have an indictment alleging a defendant of aiding and

6     abetting a bank robber.  Okay?  And you say, they aided and

7     abetted a bank robber because they had a car.  Okay?  And they

8     made the car available to the bank robber.  Okay?

9          And then you stop there.  You don't tell us who the

10    bank robber is, if the bank was robbed, when it was robbed, if

11    indeed it was robbed, in the indictment.  And you come to me

12    and say, Judge, you know, we should leave that for proof at

13    trial.  It's sufficient that for aiding and abetting bank

14    robbery that we say that there is -- that there may be

15    potential bank robbers and sufficient to say that he made his

16    car available to these potential bank robbers.

17         Isn't that what you are doing here?  Because you are

18    not -- if he is aiding and abetting illegal downloading, isn't

19    it necessary to at least allege in the indictment that that

20    illegal downloading took place?

21         MR. SU:  Well, Judge, two things in your hypothetical.

22    I mean, I think in your hypothetical the hypothetical

23    indictment would allege bank robbery in violation of 18 U.S.C.

24    2113.  It would parrot the language of the statute.  And it

25    would say that he committed this in violation of that bank

1    robbery statute and Section 2.

2         THE COURT:  And it would tell me, would you not, in

3    the indictment what was the particular bank robbery that the

4    government is alleging that he supposedly aided and abetted.

5         MR. SU:  Sure, we would name the bank that was robbed.

6    We would say the date.  And in Counts 2 through 13, which are

7    the substantive copyright infringement counts, we parroted the

8    language of the statute.  We provided the names of the works

9    that were infringed.  We've given the date on which those works

10   were infringed.  We also said that it violates Section 2, even

11   though we don't have to do that.

12        In addition, those counts all incorporate by reference

13   paragraph 1 of the indictment.  Paragraph 1 of the indictment

14   defines KAT -- or 1 B, as a commercial website that enabled

15   KAT's users to obtain copyrighted material.  It then further

16   goes on to state that millions of members were registered with

17   KAT, many of whom reside in the U.S.

18        So when you take those facts to be true, when you view

19   them in the light most favorable to the government, we allege

20   that defendant has helped distribute specific works to millions

21   of KAT users, including members in the U.S., which necessarily

22   implies U.S.-based infringement.  That is all, a short and

23   plain statement the indictment has to say.  That's all that has

24   to -- defendant has to just have notice of that.  And that's

25   exactly what we've done.

1          In addition, the defendant -- counsel just mentioned

2     that it makes no difference whether this predicate act doctrine

3     enunciated in Subafilms is an element of the claim or it's

4     jurisdictional.  But in fact, it makes a huge difference,

5     because a leading Federal Circuit case that we cite in our

6     response  brief, which is Litecubes versus Northern Light

7     Products, it holds that that requirement is not jurisdictional,

8     but it's an element of the claim proved on the merits.

9          And Northern Lights -- sorry -- Litecubes has been

10    followed, many courts around this country, including the only

11    court in this district to have confronted that same issue.  And

12    so what this really means is that even if the defendant is

13    correct that there is an extraterritorial limitation that

14    applies criminally just as it does civilly, that that just

15    means that that's just an extra element of the offense the

16    government has to prove beyond a reasonable doubt at trial.  It

17    is not something that can be attacked on a motion to dismiss

18    for lack of jurisdiction.  It is not -- it's not grounds to

19    dismiss basically on that legal basis alone.

20         And so, I think with respect to Counts 2 through 13,

21    there is ample cases for jurisdiction.  With respect to

22    Count 1, there is also ample basis for jurisdiction.  Count 1

23    is a conspiracy count.  It's basically an agreement to commit

24    copyright infringement.  Under Seventh Circuit law it's very

25    clear that jurisdiction is proper in any district in which any

1    overt act in furtherance of a conspiracy occurs.

2         Here in this indictment we've alleged over two dozen

3    overt acts including several which take place right here in

4    Chicago.  That includes that the defendant personally acts as

5    the server here in Chicago to operate the KAT websites.  Also

6    includes that KAT accepted payments for advertising or wire

7    from right here in Chicago.  So clearly under law there is

8    ample basis for jurisdiction over Count 1 as well.

9         I want to also address what defendant says is core

10   concern with this indictment.  He is arguing that the

11   BitTorrent technology meant that he never infringed the

12   copyright because he never directly hosted any files, never

13   sent it to anybody else directly.  He even quibbles with the

14   $2,500 limit that's charged in the indictment.

15        First of all, again, these are all factual arguments

16   that this Court may not consider on this type of motion to

17   dismiss.  Second of all, it just purely ignores, as your Honor

18   pointed out, that you can be held liable for copyright

19   infringement by aiding and abetting it, just like someone can

20   aid and abet narcotics transaction without physically touching

21   the drugs.  Also ignores that you can be held liable for

22   agreeing to commit it, for conspiring to commit it.

23        Defendant's argument that Sections 2 and 371 just

24   don't apply to the criminal Copyright Act are a non-starter.

25   First the argument fails because of their plain language.

1   Sections 2 and 371 by their very express terms apply to any and
2   all offenses against the United States.  That means all federal
3   offenses, of which violations of the criminal Copyright Act are
4   federal crimes.

5          Second, it also fails even if you were to resort to
6   legislative history of the Copyright Act, because as we cite in
7   our response brief, the drafters expressly contemplated that
8   violators would be subject to liability under Section 2.  The
9   defendant's only response on this point is a citation to a
10  journal article for which, A, there is no support in the quoted
11  language given; and B, stands in the distinct minority among
12  even just the secondary sources that we cited.

13         And finally, this defendant argument fails because it
14  simply conflicts with this binding Seventh Circuit precedent
15  that we've cited, which says very clearly that Sections 2 and
16  371 automatically apply.  And in fact, we cited several cases
17  for us from this circuit and this district alone that have
18  affirmed convictions that denied motions to dismiss for these
19  exact types and these exact theories of liability.

20         And even though this issue is not expressly discussed
21  in these cases, they all correctly assumed that they were valid
22  theories.  And, in fact, no case in the 40 years since 1976
23  Copyright Act has ever held that these are not proper theories.
24  And defendant can certainly point to none.

25         In fact, the only case that he wants to mention is

1    United States versus LaMacchia, which is a 1994 District of

2    Massachusetts case.  First of all, the quoted language is dicta

3    for again -- for which again there is no support.  And second,

4    the ultimate holding of LaMacchia is that criminal copyright

5    infringement can only be prosecuted under the Copyright Act,

6    not the wire fraud statute.

7          So cases -- that's exactly what we've done here,

8    Judge.  That's all this indictment says is alleges violations

9    of the Copyright Act.  So cases like LaMacchia and even Dowling

10    for that matter, they help the government and hurt the

11    defendant.

12          Again, Judge, he also wants to argue that the

13    indictment is deficient because we failed to identify a

14    principal.  But that runs up against Seventh Circuit's clear

15    teachings that we don't even need to say the word, Section 2,

16    in the indictment.  So, therefore, it cannot be deficient just

17    because it fails to name a specific principal.

18          Now finally, the defendant also makes some other

19    complaints about the indictment.  But those also lack merit.

20    First of all, he argues that the direct download allegations

21    are vague and that they are duplicitous.  But I think that

22    fundamentally misunderstands the nature of Count 1, which is

23    the count in which these allegations appear because Count 1 is

24    an agreement to commit copyright conspiracy -- copyright

25    infringement.  It's a conspiracy.  It's not any single download

1    from any single direct download website or any single copyright

2    infringement.  It's the agreement.

3         Single crime that takes place over eight years, in

4    which there are different parts.  One of those parts is the

5    operation of the direct download websites.  And so under the

6    law, it's a single continuous offense with one objective, which

7    is to commit copyright infringement.  It just has several

8    parts.  Therefore, it cannot be duplicitous.

9         It's also not impermissibly vague because as part of

10   the conspiracy, the defendant could actually be convicted on

11   this count without ever hearing any evidence of a successful

12   download from one of these direct download websites because

13   again, the crime is the agreement.

14        Given that, because it just merely describes part of

15   the conspiracy, the direct download allegations are not too

16   vague either.

17        THE COURT:  And again, is it the agreement between and

18   among the defendants and the particular individuals named in

19   the indictment?  Or is the government saying that as part of

20   the conspiracy, whatever user agreement or agreement there may

21   have been between the individuals who are downloading the works

22   by means of this site were also part and parcel of this

23   conspiracy?

24        MR. SU:  I think it's both, Judge.  I think we

25   named -- we certainly named specific people, the other named

1    defendants defendant conspired with.  We also left ourselves

2    open by saying that he's conspired with other people, known and

3    unknown to the grand jury, who are unnamed.

4         And certainly at trial, the way the evidence shakes

5    out, we could certainly, if presenting correctly, say that you

6    did enter into an implied agreement with others, including

7    downloaders from KAT or registered users of KAT.  But for right

8    now at this very early stage, it's -- I think all that's

9    required is that he had entered into an agreement with somebody

10   else.

11        Now finally, defendant argues that all he did was link

12   the torrent files in an automated way and that, therefore, if

13   we can charge him, then we could have charged Google or some of

14   the other search engines.  First of all, that is not what this

15   indictment alleges.  That is a factual argument again that this

16   Court may not consider.

17        But this indictment alleges, and you have to assume it

18   to be true, that the defendants fostered and created an entire

19   internet community whose sole purpose was dedicated to

20   providing vast amounts of copyrighted material, including U.S.

21   copyrighted material, to others for free.  Defendant argued --

22   counsel just argued, this case is not about a violation of the

23   Ten Commandments.  This case is about the violation of the

24   Commandment of Thou Shalt Not Steal, Judge.

25        In fact, obviously Google has been part of our -- has

1   not been part of the investigation.  But I think it's fair to

2   say, anecdotally speaking, that Google is not dedicated solely,

3   as this indictment alleges, to facilitating and distributing

4   copyrighted content over the internet without authorization.

5   Google doesn't solicit and reward others for uploading torrent

6   files for copyrighted media.

7           Google doesn't go out of its way to provide

8   information about the identity and the source and quality of

9   the content.  Google doesn't selectively control what torrent

10  files appear on its site, choosing to ban some people but not

11  banning people for posting torrent files for copyrighted

12  material generally.

13          Google doesn't change its domain name constantly to

14  stay one step ahead of court orders that block access to its

15  site.  And Google doesn't tell its advertisers to hide the

16  nature of advertising payments in order to conceal the elicit

17  proceeds that were generated.

18          I mean, these are the allegations that are in the

19  indictment.  These are allegations you have to assume to be

20  true.  KAT did this, as alleged.  And that's what

21  differentiates it from any of Google or any of -- or Bing or

22  any of the other automated search engines defendant might care

23  to name.

24          If defendant wants to argue that he can't prove

25  -- that we can't prove that he acted willfully, we can't prove

1    that he ever entered into an agreement with anybody else, he is

2    certainly free to do that.  But the time and the place to do

3    that is only at trial.  It is not now in a motion to dismiss.

4    These are not arguments that your Honor may consider.

5          THE COURT:  So let me ask you about Count 13, which is

6    the retail -- ten or more works, retail value of more than

7    $2,500.  And so the defense counsel argues that basically the

8    government can't, for lack of a better word, aggregate all the

9    different downloads, right?  I mean, that's how I kind of

10   interpret the theory.  That if you have an aiding and abetting

11   mechanism, right, and the core, and then you have basically

12   spokes off the core, that you have user A that downloads one

13   movie, User B that downloads one movie, user C that downloads

14   another.

15         And the government's theory is that that whole

16   enterprise is part of that conspiracy, or defendant is aiding

17   and abetting all those downloads.  And defense counsel raised

18   the issue, well, the government has to show that each

19   individual download, this kind of the principal act to which

20   Mr. Vaulin is aiding and abetting, has to meet the

21   requirements, and that he can't really aggregate all these

22   other ones because the individuals don't know what's going on

23   with the other individuals who are active on the site.

24         What is the government's response to that?

25         MR. SU:  I think first of all, whether it's a hub and

1    a spoke or the structure of the way that defendant aided and

2    abetted others, I think that's a factual -- again, a factual

3    argument.

4              THE COURT:  I guess it goes to -- it goes to this

5    question, right, which is, the government says that it's

6    alleging a conspiracy, right?  And then the government also

7    says that it's proceeding on an aiding and abetting theory,

8    right?

9              But it seems to me that those two are some -- they are

10   different things, right?  And so under Count 13, is the

11   government proceeding under a conspiracy theory?

12             MR. SU:  No, Judge.

13             THE COURT:  Aiding and abetting theory.

14             MR. SU:  This is -- Count 13 is not a conspiracy.

15   It's a substantive act of copyright infringement.  And the way

16   that it's charged, it mirrors the charging language which

17   allows us to aggregate all the infringement that happened in

18   the 180 days leading up to July 8.

19             I think as long as defendant had the right mens rea,

20   which is that he willfully for purposes of his own commercial

21   advantage, that he aided and abetted others, then we can

22   absolutely charge him with an aggregated amount based on the

23   others that he willfully aided and abetted.

24             THE COURT:  So if he knew that a hundred people in the

25   Northern District were downloading Batman v. Superman, or a

1   thousand people, and he knew that that would -- as well as

2   those other movies that you charge, and that the total retail

3   value could be more than $2,500, that that would satisfy the

4   elements?

5           MR. SU:  That's right, Judge.

6           Judge, I just want to finish by recalling something

7   that you observed during last month's hearing, which is that

8   you said that what defendant's really asking for are factual

9   details that could be more appropriately raised in a motion for

10  bill of particulars.  I think that observation just only

11  underscores how premature defendant's motion really is.

12  Because the Seventh Circuit has said that a bill of particulars

13  is not appropriate when the information defendant's looking for

14  is available in discovery.

15          And so the question really then boils down to, does

16  the discovery contain what defendant is asking for?  And here

17  that's just an issue that's just not ripe and won't be ripe

18  until he is actually here, is arraigned, gets discovery

19  disclosed, has an opportunity to review it, and then can raise

20  whatever points he wants to raise at that point.

21          But that's just not ripe now.  It may never be ripe

22  depending on the outcome of the Polish extradition proceedings.

23  And that just only underlines why your Honor should use its

24  discretion to let the Polish extradition proceedings play out.

25  Wait until there is actually a justiciable controversy.  And

1    then we can decide his motion at that point when he is actually

2    here, just like you would any other defendant.

3           I think as a result for those reasons, and

4    particularly because he is not even here yet, may never

5    actually be here, your Honor should deny the defendant's motion

6    to dismiss.

7           Thank you.

8           THE COURT:  Okay.  Thank you very much.  I will give

9    you ten minutes for rebuttal.

10          MR. ROTHKEN:  Thank you, your Honor.

11          I want to bring back the Court's attention that was

12   not addressed, at least not that we felt was satisfactory, that

13   there are no alleged content files alleged to be infringed in

14   this indictment.  And the -- any kind of making out a cause of

15   action for criminal copyright infringement has to name the

16   work.  It has to say whether or not it's a violation of

17   reproduction, distribution right.

18          But as we indicated to your Honor, and as supported

19   under penalty of perjury by the United States itself, their own

20   allegations don't support their own legal argument in the

21   indictment that torrent files themselves are the infringing

22   works.

23          If we go to take a look at Count 13 --

24          THE COURT:  But I don't -- I mean, isn't that too

25   legalistic a reading of the indictment?  Because the purpose of

1    the indictment is to give the defendant reasonable notice.  And

2    I think in this day and age, all of us at least within this

3    courtroom today understand that torrent files are not the

4    actual whether MP4, MOV, whatever files they might come in,

5    right?  Torrent files aren't actually the movie files.

6    Everyone I think here knows, or in the industry knows, what

7    torrent files are and what they aren't.

8            And so I think the government I am sure will

9    conclude -- will concede that torrent files are not the actual

10   works, right?  They are a means to a work.  They are the

11   roadmap to a work.

12           And so if you read the indictment in its entirety,

13   doesn't it give you and your client reasonable notice of what

14   they are alleging, that basically he operated this website that

15   had all these torrent files.  He knew that people were coming

16   to his website specifically to download the movies that are

17   linked and controlled by this torrent file.  And he knew that

18   what they were doing was illegal.

19           Why isn't -- and the movies that are set forth -- the

20   indictment sets forth the movies and the time period.  So why

21   isn't that enough to give your client notice of what the

22   government is after with regard to the indictment?

23           MR. ROTHKEN:  Because it doesn't make out a criminal

24   copyright claim.  In other words, again, under Dowling -- and

25   this is very important.  Under Dowling, Dowling actually said

1    that copyright is not stealing.  So when the government comes

2    in and says, copyright is stealing, it's wrong.  In fact, at

3    issue in the Supreme Court in Dowling was the notion that you

4    cannot elevate copyright to theft and stealing and to all these

5    common-law crimes.  And that's why we have to have great

6    vigilance in looking out at what the theories are and making

7    sure that we don't apply, you know, judge-made law or some sort

8    of value set, that you marry the allegations to what Congress

9    created.

10            If we were in a Grokster situation, it's much more

11   just stalled.  But here we have to be very disciplined so that

12   we can get these issues distilled down, and so that we could

13   properly interpret the law.  And here Section 4, it's the only

14   place in the indictment -- this is not up there right now, but

15   in Section -- do you have it in front of you, your Honor?

16            THE COURT:  I do.

17            MR. ROTHKEN:  In Section 4, their theory -- and it's

18   nowhere else in the indictment -- is that these defendants made

19   available, caused others to make available, copyrighted content

20   on KAT to millions of individuals by collecting and uploading

21   torrent files.  The only torrent files that are mentioned are

22   26 V and J and in the counts that we described.  And now they

23   are conflating torrent files themselves to be the infringing

24   work.

25            It clearly does not comply with the statute.  It is

1     defective as a matter of law.  If they think they have a

2     theory, your Honor, where other folks aided and abetted, well,

3     then they would have to go ahead and issue a new indictment.

4     You can't cure it.

5          I'll give you an example of why that's the case.  If

6     you take a look at Counts 3 through 12, and if you take a

7     look -- use my finger -- right over here in Section 2, they

8     basically say that it's the defendants, not defendants with

9     users, but it's the defendants that went ahead and directly

10     infringed.  And then they just list the torrent files again.

11     They are conflating the torrent files to direct infringement.

12     It is a defective claim.

13          Now, if they wanted to go ahead and make it so aiding

14     and abetting could be implemented, notwithstanding the

15     presumption that Section 2 is implicitly understood in this,

16     they have to go beyond the defendants aiding and abetting each

17     other.  They have to put in the information regarding the

18     users.  And they have to lay out the direct copyright

19     infringement claim under the criminal law for those users,

20     whether it's user A, B, C or D or real names or John Doe, that

21     were aided and abetted.  It's not enough to say that a dual use

22     technology, like a search engine --

23          THE COURT:  But why aren't they saying here that on

24     those dates unnamed users on those dates accessed those

25     copyrighted works via the torrent files and illegally

1    downloaded them?  Why isn't that a fair reading of what -- of

2    what that says?

3         MR. ROTHKEN:  Because in section -- in paragraph 1 it

4    described the BitTorrent process.  Someone goes to KAT.  They

5    download a torrent file, your Honor.  And they leave the site

6    behind.  They take the torrent file.  After they left KAT

7    behind, they used the BitTorrent client, like a PDF file.  They

8    load it in there.  And then away from KAT they are now dealing

9    with the general BitTorrent network.

10        KAT has absolutely no idea what's going on at that

11   point.  They're probably dealing with people who never been to

12   KAT.  We don't think they can make out the claim.  But I think

13   if they want to go ahead and try, certainly they have the right

14   to do that.  But this is not a closed system.

15        And so we have to be very diligent about not

16   conflating torrent files themselves to direct copyright

17   infringement.  Someone can download torrent file, not act on

18   it.  That's Google.  Someone can download a torrent file and be

19   completely extraterritorial.

20        THE COURT:  Right.  But the purpose of your client

21   allegedly making the torrent files available isn't for them to

22   just kind of exist on their own out in the ether.  The point of

23   making them available is to attract people who want to use them

24   to download the movies that the torrent files will link them

25   to, right?  I mean, I don't think anyone -- I think it would be

1  a stretch to argue that people who put torrent files up on

2  websites like that don't intend them to be used by people that

3  come onto the sites to have -- to get access to the movies, the

4  underlying works.

5       MR. ROTHKEN:  That may be an argument the prosecution

6  wants to make if they put it in an indictment.  But it's not in

7  the indictment.  It's not the object of the -- of the

8  conspiracy.  It's not the object of the aiding and abetting.

9  They are only mentioning defendants herein.

10       And, your Honor, let's take a look at this, and why is

11  it important.  Because, your Honor -- I am sorry.  I didn't

12  mean to cut you off.

13       Your Honor, let's make believe that they can add

14  aiding and abetting to this, and they can add more language to

15  it, right?  It is -- it would be the aiding and abetting of

16  distribution, your Honor, right?

17       So if a user were to go to a torrent site and download

18  a torrent file and then leave the site behind, you are not

19  aiding and abetting a distributor at that point.  The most

20  you'd be aiding and abetting, if you want to embrace the

21  government's argument, is a reproducer.  It won't even fit the

22  statute, because by getting it they are not distributed.  Now,

23  if later on they want to distribute or if they turn that

24  function on, maybe.  But it's still not enough.  It's a bridge

25  too far.

1      Everything in here is defective, either because -- for

2  all the reasons that we mentioned.  Either it's because they

3  didn't allege a conspiracy with an offense against the United

4  States.  Eleven torrent files.  Or it's because they didn't

5  incorporate things by reference correctly.  Or it's because the

6  torrent files themselves is not a reproduction, not a

7  distribution, and not putting on a network.

8      If they want to come back and they want to basically

9  say some exotic theory about how suddenly a reproducer can turn

10  into a distributor and how -- even though that's very

11  attenuated how KAT is somehow responsible, so be it.

12      But on this indictment --

13      THE COURT:  Explain your statement about how a

14  reproducer can become a distributor.

15      MR. ROTHKEN:  If they turn around and they go ahead

16  and then start distributing this to the BitTorrent network.  I

17  don't think that we can say, you know -- but they have to find

18  the people -- they don't have to call them by name.  But they

19  certainly have to make out some claim more than zero as to

20  where the aiding and abetting of distribution comes in.  It

21  doesn't come in on this record.  We don't have any allegation

22  like that.

23      THE COURT:  Can you put up paragraph 4 again, please?

24      MR. ROTHKEN:  Yes, your Honor.

25      THE COURT:  So -- thank you.

1          It seems to me that the reading of paragraph 4 that

2     you offer is one way of reading it.  But there is an

3     alternative reading, right?  So, for example, you can -- it's a

4     long sentence.  And my clerks know that I hate long sentences,

5     precisely because of this.

6          It is further part of the conspiracy that defendants

7     made available and caused others to make available, and then

8     the adverbial phrase would be, on KAT, right?  And then what do

9     they make available on KAT?  Vast amounts of copyrighted

10    content without authorization.

11         How did they do that?  By collecting and uploading

12    torrent files to KAT.  That's their theory, isn't it, that

13    by -- not that the defendants put the copyrighted content on

14    KAT.  But they made the copyrighted materials available on KAT,

15    allow people to get access to them by how?  By means of

16    collecting and uploading torrent files.

17         So it seems to me that that reading is just as

18    plausible as the reading that you're offering, which is that

19    the government is alleging that vast amounts of copyrighted

20    content was actually placed on KAT.  It's just that the English

21    language might not be as particular or specific or the drafters

22    may not be as specific as we all want it.

23         But it certainly can be read to state that.  And then

24    particularly if you read it in context of all the other

25    allegations in the indictment, that would lead credence to that

1  interpretation of paragraph 4, wouldn't it?

2              MR. ROTHKEN:  Respectfully, no.  And I also don't

3  think it's enough.  So the answer will be, no, and it's not

4  enough, because of two reasons.  One, the making available of

5  torrent files by any method is not direct infringement.  And

6  the counts that we articulated -- let's go back to these

7  counts -- is inconsistent with their view.  This is

8  inconsistent with their view in Counts 3 through 12.  In Counts

9  3 through 12 they're saying it's only the defendants, only the

10  defendants, not users.

11              So it's the putting up the torrent files themselves

12  that is the direct infringement.  It can't save it.  Okay?  It

13  can't save it.

14              Secondly, you have to understand more about who the

15  primary infringers are.  If the primary infringement is a user

16  that is making available and distributing in the cloud

17  somewhere something, you have to describe that.  It's not in

18  here.

19              So, your Honor, obviously a fertile mind may be able

20  to indict a watermelon.  But the watermelon is not indicted

21  right here.  And I have to say that this is a particularly

22  important case because it's one of the cases of first

23  impression.  We have pointed out to you the concern that we

24  have that the grand jury didn't rule on this in a reasonable

25  manner, because of the conflation between the affidavit to the

1    indictment and along the way the indictment conflating the

2    torrent files into direct infringements.

3           And when we have a process like this, that seems like

4    the grand jury was confused and didn't get the proper legal

5    instruction.  And then when you have Counts 3 through 12,

6    which, given our interpretation that these are torrent files,

7    fails on its face, and the other parts of the indictment are

8    defective too, we would say the entire indictment is defective.

9           There is no principle that allows the government to

10   indict somebody upon generally saying, you are a copyright

11   infringer.  And that's what the government was urging to you in

12   their oral argument.  They were saying to you, well, somewhere

13   in the BitTorrent ecosystem you're really bad.  And we're

14   frustrated by your badness.  But there should be no shortcut.

15   They should have to allege who the direct infringers are, what

16   the willful infringements are, and how all this works.

17          Just like you articulated, your Honor, aiding and

18   abetting requires more than just saying, you aided and abetted

19   copyright infringers generally.  So --

20          THE COURT:  So let's look at that.  Let's look at the

21   paragraph that you have up right now.

22          MR. ROTHKEN:  Yes.

23          THE COURT:  And I know that the language is supposed

24   to parrot the statute.  But it says, on or about the dates

25   listed below, in the Northern District of Illinois, Eastern

1  Division and elsewhere, defendants herein, and let's go to,

2  let's skip down a little bit there.  Willfully and for purposes

3  of commercial advantage and private financial gain, right?

4          MR. ROTHKEN:  Right.

5          THE COURT:  They say they infringed a copyright by

6  distributing work.  And I am going to focus on, by making it

7  available on a computer network accessible to members of the

8  public, right?

9          So computer network is the BitTorrent network?

10         MR. ROTHKEN:  The way that we are reading this, based

11 upon the government's own allegations and on the affidavit

12 which marries this to the affidavit, is that these are torrent

13 files that were on the KAT website.  And so they didn't place

14 the work, which is the actual content.  They are claiming they

15 placed the torrent files on the website.  So you are not

16 putting the content on a network accessible to members of the

17 public.

18         THE COURT:  But the BitTorrent file makes the work

19 available on a computer network accessible to members of the

20 public, right?

21         MR. ROTHKEN:  No, because you have to make the work

22 available on the computer network accessible to members of the

23 public, not a link or a proxy.  So they might be, in general

24 parlance, a secondary infringer.  But the statute they are

25 using only punishes primary infringers.  And the primary

1   infringer would be the folks who somewhere out in cyberspace

2   actually take the content and dump it on a server.

3        KAT never touched content.  BitTorrent websites deal

4   in torrent file.  Trackers deal not in content.  BitTorrent had

5   no content -- I'm sorry.  BitTorrent has no content and KAT had

6   no content.  So they can't make it available as a matter of

7   law.

8        Now, to get extra, you know, information on that,

9   making available alone is not enough too.  We cited Napster and

10  its progeny for that.  You actual have to have an actual

11  distribution.  So that won't even work anyway.

12       THE COURT:  The courts are split on that, right, the

13  whole make available theory?

14       MR. ROTHKEN:  I think there are some courts who --

15       THE COURT:  The Seventh Circuit hasn't come down.

16       MR. ROTHKEN:  Right, some courts have disagreed with

17  it.  But if you just look at Subafilms alone, which is a

18  prominent case, they support the notion that you need actual

19  infringement.  So -- and one in the United States.

20       So making available we believe -- and if you look at

21  the Rule of Lenity, I would urge the Court to follow that.

22  It's a more reasoned rule.  You need an actual infringement in

23  the United States.  And making available is not enough under

24  the statute.  And a torrent file is not making available.

25       So this is defective for a number of reasons, your

1    Honor.  And it's not a discovery issue.  It's not, oh, let's

2    get a bill of particulars.  It goes to making out the claim

3    itself.  On the four corners of this indictment, this claim

4    fails as a matter of law.  And their urged interpretation, we

5    would argue -- and we have the greatest amount of respect for

6    the prosecution.

7          But we would argue any interpretation that tries to

8    say those are content files would not be in good faith because

9    of the pre-existing affidavit, which never discussed direct

10   downloads, which only discussed torrent files.

11         THE COURT:  All right, counsel.  You can wrap up,

12   please.

13         MR. ROTHKEN:  Thank you, your Honor.

14         So, your Honor, there are no infringing users and

15   infringements tied to users.  Torrent files cannot be objects

16   of aiding and abetting or conspiracy.  And there is no user

17   infringements in the United States.

18         So even if that is the last argument, we will still

19   say whether it's a conspiracy or aiding and abetting or direct

20   infringement or even money laundering, that they would still

21   have to allege a direct infringement in the United States

22   because the Subafilms fact pattern discusses a de facto

23   conspiracy.  And Subafilms basically said, you got to have in

24   that scenario an infringement in the United States to be

25   actionable.

1          So, your Honor, that -- unless you have any other

2  questions?

3          THE COURT:  No.  Thank you very much.

4          MR. ROTHKEN:  Appreciate it.

5          THE COURT:  Thank you for the arguments on both sides.

6  And the Court will maintain the motion under advisement.

7          MR. ROTHKEN:  Thank you, your Honor.

8          THE COURT:  Thank you.

9          MR. SU:  Thank you.

10     (Which were all the proceedings heard in this case.)

11                        CERTIFICATE

12          I HEREBY CERTIFY that the foregoing is a true, correct

13  and complete transcript of the proceedings had at the hearing

14  of the aforementioned cause on the day and date hereof.

15

16   /s/Alexandra Roth                        2/2/2017
     _____    _____
17   Official Court Reporter                      Date
     U.S. District Court
18   Northern District of Illinois
     Eastern Division
19

20

21

22

23

24

25